## CLEVELAND *vs.* BOERUM and others.

Where the claim of title to real estate is solely through a power it must, in order to be sustainable, be proved that such power was duly executed. If it is qualified by a condition precedent it must appear that the condition was performed, or the attempted exercise of it will prove ineffectual.

In order to sustain a title alleged to have been acquired under statutory proceedings, all the requisite preliminaries must have been adopted, and must be proved. There is no presumption in their favor, where a change of title to real estate is attempted to be established.

An assignee in bankruptcy has no power to sell and convey the property of the bankrupt, without an order of the court    The obtaining of such an order is a substantial requisition of the statute, and must be complied with.

A purchaser claiming under a deed executed by such assignee, must aver and prove an order of sale. The order cannot be proved by recitals in the deed. Such recitals are only evidence of the bankruptcy, and the appointment of the assignee, and the consequent conveyance to him.

A sale and conveyance, by an assignee in bankruptcy, of lands held adversely at the time, made more than two years after the decree in bankruptcy, is void, and confers upon the purchaser no title to the lands, or right to maintain an action to recover them.

After the power of the assignee, to recover the lands, has expired, a deed from him will not revive it, in favor of his grantee.

A title to real estate, acquired under a judicial sale, cannot be successfully assailed on the ground that one who was originally a defendant in the suit, claiming an interest in, or lien upon, the land, became a bankrupt or an insolvent during the progress of the suit, and his assignee was not made a party.

Under the bankrupt act of 1841. it is not necessary to make assignees, appointed *pendente lite*, parties, in order to bind their interests.

If there is any irregularity in a decree, in not making an assignee in bankruptcy a party, he may move, within the year allowed by the revised statutes, (2 *R. S.* 359,) but not afterwards, to set aside the decree.

APPEAL from a judgment entered at a special term. For a statement of the facts, and the decision of the special term, see the report of the case below, 23 *Barbour,* 201.

*A. Thompson* and *Geo. Wood,* for the appellant.

*John A. Lott,* for the respondents.

*By the Court,* S. B. STRONG, J. This is a most ungracious suit. The plaintiff, for a nominal consideration, has intruded

Cleveland *v.* Boerum.

into matters with which he had previously no concern, and now seeks, upon technical grounds, to deprive the defendants of their property, honestly and fairly obtained, and which they were induced to purchase under titles derived pursuant to, and by virtue of, a decree of a court of equity, which had remained unassailed for many years.

It is a material question, but one which I did not deem it necessary to consider when this case was formerly before me, and should not now, but for the powerful argument of the plaintiff's counsel, whether, if the defendant's titles are imperfect, the plaintiff has proved any right to impeach them? He claims the lands in dispute, or rather a right to redeem them, under the title of the two mortgagors, which it is alleged he has acquired pursuant to proceedings under the United States bankrupt act, approved August 19, 1841. Does the complaint, or the proof, establish such right? I speak now without reference to the legal effect of the foreclosure suit. The mortgagors were declared bankrupts—one on the 16th of June, 1842, and the other on the 23d of July in the same year. On those days the interests of the bankrupts, whatever they were, in the lands in dispute, vested in the general assignee. He then acquired a right to defend the foreclosure suit which was pending against the bankrupts, in the same way, and with the same effect, as they might have acted, (§ 3 *of the bankrupt act,*) of which I shall have something to say hereafter. He could sell, transfer and convey the bankrupts' property and rights of property at such times, and in such manner, as should be ordered and appointed by the court in bankruptcy. (§ 9.) His deeds containing proper recitals being declared to be *as* effectual to pass the title of the bankrupt, to the lands therein mentioned, to the purchaser, *as if made by the bankrupt himself* immediately before such order. (§ 15.) And it is declared, (in § 8,) that " no suit at law or in equity shall, in any case, be maintainable by or against such assignee, or by or against any person claiming an adverse interest, *touching the property and rights of property aforesaid* [of

the bankrupt] in any court whatsoever, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of suit shall first have accrued."

The act qualifies the power of the assignee to sell and convey the property of the bankrupt. He cannot do either without an order of the court. In this case no such order is set forth or averred in the complaint, nor was any such proved. The requisition is a substantial one, not only because it is expressly provided by the statute, but for the additional reason (if any was necessary) that the interests of the creditors, which are of some importance, although they are not generally consulted as much as they should be, in these measures, (nor were they consulted at all by the assignee in this case,) depend much upon a judicious disposition of the bankrupt's property. When the claim of title to real estate is solely through a power, it must, in order to be sustainable, be proved that such power was duly executed. If it is qualified by a condition precedent it must appear that the condition was performed, or the attempted exercise of it will prove ineffectual. In this case the deeds from the assignee do not appear, but if they had been produced they would not have sufficiently proved an order of sale, even if they had recited it, as the recitals in such deeds are only evidence of the bankruptcy, and the appointment of the assignee and the consequent conveyance to him. The decisions of the courts in this state are strong to show that in order to sustain a title alleged to have been acquired under statutory proceedings, all the requisite preliminaries must have been adopted, and must be proved. There is no presumption in their favor where a change of title to real estate is attempted to be established.

The deeds from the assignee, under which the plaintiff claims, were executed by the assignee—the one purporting to convey the estate of one of the bankrupts to the plaintiff on the 24th of November, 1845, and two purporting to convey the estate of the other bankrupt to one Clute on the 5th and 18th of March, 1856. Clute conveyed to the plaintiff by

deeds dated on the 7th and 19th of March in the same year. It was admitted on the trial that the sales by the assignee were—to Clute, on the 4th and 10th days of March, 1844, and to the plaintiff, on the 25th of November, 1844. Both the sale and deed to the plaintiff were made more than two years after the decree in bankruptcy. So were the two deeds to Clute. The sales to him were made before the expiration of the two years, but he acquired no rights under the official sales until the deeds to him were executed. It is not, perhaps, material to consider what must be deemed to be the date of the acquisition of the rights of Clute, whatever they were, as *his* conveyances to the plaintiff were not official, and, as they were for lands then held adversely, they were void. What rights, then, could the assignee convey, when the deeds from him were given? The lands were held adversely, and the assignee could not then maintain any suit at law or in equity to recover them. (§ 80, *before quoted.*) If his power to recover the lands had expired, could a deed from him revive it, in favor of his grantee? He might have conveyed lands held adversely (so far as it relates to that objection) if he had done so in season; but he had not done that. The limitation was a part of the act conferring upon the assignee all the power he had. Could it have been the design of congress that the assignee might confer a right of action which he had suffered to expire, and thus avoid the limitation? That would have evinced a disposition to encourage maintenance, which is not to be presumed. The intentions were, no doubt, to exact vigilance, and to prevent the injustice which might result from the exercise of the extraordinary powers of assignees after a limited date. Both objects would be defeated if they could effectually revive rights of action which they had suffered to expire from lapse of time.

It seems to me, then, that the plaintiff derived no title to the lands in dispute, or right to maintain an action to recover them, under the conveyances from the assignee.

I come now to the question which was principally agitated

on the trial, and which is certainly one of great importance. If titles to real estate can be successfully assailed where they have been acquired under judicial sales, on the ground that some one who was originally a defendant in the suit claiming an interest in, or lien upon, the land, had become a bankrupt or an insolvent during the progress of the suit, and his assignee had not been made a party, the rule will be productive of great inconvenience and uncertainty, and many estates which have been deemed secure may be seriously jeoparded, and probably sometimes, wholly defeated, It has long been deemed settled law, that a judgment in a suit in *rem* binds not only the parties, but all who claim under them through any means occurring after the commencement of the suit. The rule is one of convenience—almost of necessity. If it should be otherwise, suits, where the defendants are numerous, would be almost interminable. In this case, where there are some five hundred defendants, the suit could never be brought to an end in behalf of the plaintiff, (if he has any merits,) if he was bound to notice every change of interest, and substitute the new owners or claimants as parties, before judgment. The general principle was admitted by his counsel on the argument, but he contended that it is inapplicable where the change is by operation of law, as in cases of bankruptcy and insolvency. There are certainly some strong cases in the English courts, and in our own, going to show that under former bankrupt laws it was necessary to make the assignees appointed *pendente lite* parties, in order to bind their interests. In England that would not be productive of much inconvenience, as the decrees in bankruptcy are there made by a single tribunal, and a knowledge of them can be easily attained. But under our system, of 1841, there were as many tribunals having cognizance of cases in bankruptcy as there were states, or district courts. It would impose an intolerable burthen upon plaintiffs in cases where the defendants are numerous, and scattered over our immense territory, to require repeated examinations in the offices of the clerks of all the districts, which

Cleveland *v.* Boerum.

would be necessary when the residence of any absent defendant should be unknown. With us, then, a different rule of practice would seem to be absolutely necessary. It is true the *argumentum ab inconvenienti* cannot change a principle, but it may change a rule of procedure, and particularly when it is an exception to a general rule formed mainly for convenience. Besides, our bankrupt act differed essentially from the English system, and in particulars which seem to call for a change of practice, if indeed it be a change. I have alluded to one— the great number of tribunals. Another is the provision in the 3d section, to which I have before alluded, and which is in the following words : " And all suits in law or in equity then pending in which such bankrupt is a party, may be prosecuted by such assignee to its *final conclusion, in the same way, and with the same effect,* as they might have been by such *bankrupt.*" Now this does not indicate a necessity for a change of parties, but it expressly permits the suit to proceed to judgment *in the same way* as it might have done but for the proceeding in bankruptcy. It supposes, as it seems to me, that it might proceed against the original defendant notwithstanding his bankruptcy, and with the like effect, but gives to the assignee the control over it, and subjects it to his management so far as it relates to the original rights and interests of the bankrupt. By the 11th section of the act, the assignee is authorized, under the direction of the court, to redeem and discharge any mortgage, and to tender a due performance of the condition thereof. Now what further is necessary for the protection of the bankrupt or his creditors ? Should there be any doubt as to the validity of the mortgage or its preference over the interests of the bankrupt, the assignee may interpose a defense in his name. Should the mortgage be for a sum less than the value of the land, the assignee may redeem it, or he may suffer the suit to proceed, and eventually claim any surplus. The assignee has legal notice—in this case he has actual notice—of the pendency of the suit. If there is any defense, he has an opportunity, and is bound to make it. If

he should neglect his duty, it would be most inequitable to make innocent purchasers, who had nothing to do with the foreclosure suit, nor any right to control it, suffer for his omission. The 15th section of the act provides that the deeds by the assignees should be as effectual to pass the title of the bankrupt to the land therein mentioned, as fully, *to all intents and purposes as if made by the bankrupt himself* immediately before the order (decree) in bankruptcy. This would seem to assimilate the effect of the deed by the assignee to that of a conveyance by the bankrupt himself before the decree in bankruptcy; and when such change is made, no change or substitution of parties is necessary.

By our system of foreclosing mortgages of real estate in a court of equity, the decree nominally binds the interests which the defendants had at the commencement of the suit. The notice of *lis pendens* which the law requires prevents the rule from operating injuriously to subsequent cautious purchasers or incumbrancers. Persons desirous of acquiring new interests in the property, or those who become entitled to any such interests by operation of law, can by due inquiry ascertain the existence and nature of the suit, and can, if they deem it proper, adopt all necessary measures to protect their rights. If they will not move in the matter why should others assume that their alleged acquisition is lawful, and therefore incur additional expense and delay? It is far more reasonable to require those claiming a new right, from any cause whatever, to assert it promptly, or to forfeit it altogether. The bankrupt act of 1841, I think, contemplated such action by the assignees, and required no affirmative action by the plaintiffs in existing suits.

But if there was any irregularity in the foreclosure suit, in not making the assignee a party—and it is so at first designated by Chancellor Walworth in the case of *Johnson* v. *Fitzhugh*, (3 *Barb. Ch. Rep.* 371)—the assignee might have moved within the year allowed by the revised statutes, but not after that, to set aside the decree. (2 *R. S.* 359.) The chancellor

Cleveland *v.* Boerum.

afterwards says that the decree is a nullity as to the assignee, and so it may be, so far as it relates to any requisition for affirmative action by him; but I doubt much the correctness of a subsequent remark of his, that it could not foreclose the equity of redemption in the mortgaged premises.    Certainly the effect of the decree, as it stands, is to foreclose the equity of redemption which the bankrupt had at the commencement of the suit, and if that effect should for any cause be inequitable, or wrong, a movement should be made to set it aside. It cannot be deprived of its legal effect as it stands, without impugning the faith due to our words.    Judgments may be assailed for something dehors the record; as fraud in obtaining them, or want of interest in the plaintiff, but that must be by a direct procedure, and not in a collateral suit.    The wisdom of that rule is strongly illustrated by the facts of this case.    If the decree of foreclosure had been set aside under a direct attack by the assignee, the equity of redemption might have produced a considerable amount for the creditors.    But the sale of it under the dark cloud of the decree produced the paltry sum of two dollars and fifty cents, and the large profit which would result, if this suit should be sustained, would go to a prowling assignee.    I am satisfied that no court would have directed, or sanctioned, a sale under such circumstances. And it is a matter of especial wonder that it was ever made by any assignee.

The judgment should be affirmed.

*Judgment accordingly.*

[DUTCHESS GENERAL TERM, May 11, 1858.    *S. B. Strong, Davies* and *Emott,* Justices.]