MARGARET GRISWOLD, Respondent, v. ALEXANDER G. PERRY et al., Overseers of the Poor, &c., Appellants.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1872.)

A purchaser of land from a trustee with power to convey only on the happening of an event, which is a condition precedent, must ascertain at his peril whether the condition has been fulfilled. And this is so, even although the deed recites performance of the condition.

It is otherwise, under a condition subsequent, under 1 R. S., 730, § 66.

Accordingly, where trustees had power to sell only in case there should be a deficiency of income for certain purposes, and conveyed, reciting the condition and a deficiency under it,—Held, that their conveyance was void, it appearing there was in fact no such deficiency.

To justify a sale the trustees should state an account and show a deficiency in point of fact. An offer to show payments of portions of the income, without going this length, is insufficient.

Trustees should proceed for settlement of their accounts against the cestuis que trust before assuming to act on a fulfillment of the condition.

THIS was an appeal by the defendants from a judgment entered on the referee's report, in the plaintiff's favor. The facts, as they appeared, were these, viz.:

On the 13th August, 1854, John Eastland, of Bethany, in the county of Genesee, departed this life, leaving a last will,

in and by which he gave and devised to his daughters Elizabeth and Nancy, both of whom were *non compos mentis*, the income of a farm of land situate in said town, containing 105 acres, except so much (so it was provided) as should be necessary for his (the testator's) support and maintenance during his natural life, the income to be theirs during their natural lives, and, after deducting sufficient for his support, to be applied by his executors for the support of Elizabeth and Nancy in the following manner, viz.: the executors were authorized and required to give the whole remaining income of the piece of land to such person or persons as should faithfully take care of and provide for Elizabeth and Nancy, and so long as they should do so. The executors were also authorized to see that proper care should be taken of the piece of land, and, if the remaining income thereof should be insufficient for the support of Elizabeth and Nancy, after deducting for testator's support, to sell at private sale so much of the land as they should deem necessary for the support of Elizabeth and Nancy. At the decease of Elizabeth and Nancy the testator directed that the farm, or so much of it as should remain after the support of himself and of his daughters Elizabeth and Nancy, should be equally and equitably divided by his executors between those persons who should have faithfully taken care of and supported Elizabeth and Nancy and himself, from and after the 1st April, 1850, in proportion to the time that each person should have so done. The testator's daughter Margaret was to share in the division of the farm, for one year from the 1st April, 1850, and for all the time that she had taken care of Elizabeth and Nancy and himself, and for all the time that she should take care of them. The testator defined "supporting" to be an application of the farm for the purpose of support.

By a subsequent clause of the will it was provided that the testator's daughter, Margaret, should have a home in the dwelling-house on the farm, as long as she should remain unmarried, but should support herself.

Robert Eastland and A. W. Page were appointed executors

of the will. The will was duly proved before the surrogate of Genesee county. Letters testamentary were duly issued to them, and they entered upon their duties as executors.

Nancy Eastland died on the 6th October, 1855, Elizabeth on the 28th June, 1870. Margaret Griswold and Jane Lincoln supported the testator and Elizabeth and Nancy. Joseph Eastland also supported them. Robert Eastland, John E. Chittenden, Joseph Eastland, Polly Chittenden and Mary Jane Chittenden supported Elizabeth for several periods of time mentioned in the report of the referee. On the 24th March, 1858, the executors of John Eastland sold and conveyed thirteen acres of the land above mentioned to Robert Young. In the deed the provisions of the will respecting the disposition of the farm of 105 acres were recited, and also that the income of the premises were insufficient for the support of Elizabeth and Nancy, the testator's daughters, and that the grantors therefore deemed it necessary, pursuant to the authority contained in the will, to sell a part of the premises, and that they therefore, in pursuance of such power and in consideration of $336.55, sold and conveyed the premises described, and the deed contained a covenant of warranty.

Robert Young, the grantee above named, died in 1858, leaving a will appointing Sally Young his executrix. In 1859 she conveyed thirteen acres to Joseph Eastland, and in 1864 the latter conveyed the same to the defendants, Perry, Brown and Griswold, overseers of the poor of the county of Genesee, who entered into possession under their deed and claimed the premises by virtue thereof.

John Eastland, the testator, left several sons and daughters besides Elizabeth and Nancy above named. The plaintiff, Margaret Griswold, is one of the testator's daughters who is named in said will, and who supported for for a time the testator and Elizabeth and Nancy under the will. She brought this action to set aside the conveyance of the thirteen acres by the executors of her father to Young and the subsequent conveyances of the same premises, as being given in violation of the powers conferred by the will of her

father, the income of the 105 acres being at all times more than enough to support the testator and his daughters Nancy and Elizabeth. The plaintiff insisted that the whole of the 105 acres belonged, by virtue of the will of her father, in certain proportions, to those who supported the testator and his two daughters, in proportion to the length of time each rendered such support, and that she, as one of the persons, was entitled to an undivided seventh part of the 105 acres. She demanded judgment, that the deed from the executors of her father for the thirteen acres be declared void. If that relief was not granted, she then asked that the surviving executor of her father's will should divide the residue of the 105 acres between her and Jane Lincoln as follows: Four-fifths to plaintiff, and one-fifth to Jane. And if it should be held that the land passed to the heirs of John Eastland, deceased, as if no will had been made, that then the same be apportioned amongst the heirs, or that the land should be sold and the proceeds divided. The overseers of the poor answered, insisting on the validity of the conveyance to them.

On the trial, the will of John Eastland was put in evidence, and the length of time the several persons who had supported the testator, and his daughters Elizabeth and Nancy, was proved.

It was conceded that the income of the farm was sufficient to support those persons during and throughout their lives. The conveyances from the executors to Young, and from his executrix to Joseph Eastland, and from him to the overseers were also proved.

The defendants offered to prove that, prior to a final settlement, the executors had incurred costs in defending an action brought by one Lincoln, as assignee of Margaret Eastland, to the amount of $222.80; which sum the surrogate had refused to allow the executors on their final accounting before him. The plaintiff's counsel objected to the evidence and it was rejected by the referee.

The defendants also offered to prove that the Lincoln suit was brought to recover for wheat sown on the farm mentioned

in the will after the death of the testator, together with other property, and a part of the recovery was for the wheat sown after the death of the testator. The plaintiff's counsel objected to the evidence, and it was rejected by the referee.

The defendants also offered to prove that one Scoins had sued the executors to recover for wheat sown after the testator's death, and that the executors defended the action and paid out therefor sixty-three dollars. The evidence was objected to by plaintiff's counsel and rejected by the referee.

The defendants offered to prove the items of their account, and that the suits had been defended in good faith. The evidence was objected to by the plaintiff's counsel and rejected by the referee.

The referee ruled and decided that the costs and disbursements incurred by the executors in the administration of the estate, prior to the final decree of the surrogate, should be excluded, and that such costs and disbursements by the executors, after such final decree, might be given in evidence; to which ruling and decision defendants' counsel excepted.

The surrogate, upon the presentation of the account of the executors, and a final accounting asked for, had referred it to an auditor to take proofs and report what part thereof should be allowed, and what part, if any, disallowed; who reported, amongst other things, that two-thirds of the amount paid by the executors for costs and expenses in the suits above mentioned should be allowed to them. But the surrogate refused to confirm that part of the report, and disallowed such item without prejudice to the right of the executors to present said claim on the final settlement of their account for expenses incurred in the care and management of the real estate.

The referee found the facts aforesaid, with others not necessary to a decision of the questions presented by this appeal. He also found that there were no liens on the premises mentioned in the will; that they were incapable of partition, and were worth $5,000. He decided as matter of law that the will of the testator was valid; that the executors

Griswold *v.* Perry.

took a fee in said lands by implication; that on the death of Elizabeth the survivor of the two daughters, who were *non compos mentis*, the fee descended to the persons who had supported the testator and his daughters, in certain proportions stated by him, as remainder-men and tenants in common; that on the death of said Elizabeth the estate the executors had in said land terminated, and an estate in fee vested in the remainder-men above named; that the conveyance by the executors of the thirteen acres, above mentioned, was inoperative and void and vested no estate in the grantee, and that the overseers of the poor had no title to nor interest in said premises. He ordered judgment, that said premises be sold and the proceeds, after paying costs, &c., divided amongst the remainder-men in the proportions specified in said judgment.

The overseers excepted to the conclusions of law contained in the report of the referee, and they alone appeal.

*A. P. Laning*, for the appellant.

*Peck & Bowen*, for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J. It is not necessary for us to determine whether the executors of the will of John Eastland took a fee by implication under said will in the land devised thereby, or whether they were clothed with a mere power in trust to sell said lands in the event the income therefrom was not sufficient to support the testator and his daughters, Elizabeth and Nancy, as in either case they had power to sell any part of the land described in the will only in the event the income proved insufficient for the support of said persons.

There is great hardship in requiring a *bona fide* purchaser for value, in order to establish a valid title to land purchased of a trustee who is authorized to convey, on the happening of some future event, to prove that such event had occurred

when its occurrence is asserted by the trustee, who alone can know whether it has or has not in fact occurred. But the point seems to be too well and too long established to be considered open to discussion.

In Hill on Trustees, 478, it is said a power of sale, like all other powers, can be exercised only in the mode and subject to the conditions, if any, prescribed by the instrument creating the power. Therefore, when the trust is to sell after the death of the tenant for life, a sale in his lifetime will be bad, even though made under a decree of the court. Upon the same principle, when the power of sale is to be exercised only on some conditional event, such as the deficiency of another estate to answer certain charges, or upon the purchase and settlement of another estate to the same uses, the power cannot be exercised without the literal performance of these conditions.

As regards purchasers from trustees, under powers of this description, there is a material difference whether the conditions annexed to the exercise of the power is precedent or subsequent. If precedent, its performance is essential for giving existence to the power of sale, and no sale under the power can by possibility be maintained, unless the condition be performed. But when the condition is subsequent, the power of sale will attach independently of the performance of the condition. This distinction between *conditions precedent and subsequent* is recognized in Tiffany & Bullard on Trustees, 767.

In *Richardson* v. *Sharpe* (29 Barb., 222) a sale by executors of real estate was held void, made eight years after the testator's death, that the will required to be sold within seven years after that event.

In *Briggs* v. *Davis* (20 N. Y., 15), fifteen trustees, holding lands in trust for creditors, reconveyed them to the grantor by deed, which recited that the trust had been executed, when, in fact, there were *cestuis que trust* entitled to a sale and distribution of the proceeds, and the debtor, after such conveyance, mortgaged the same to one having constructive but not

Griswold *v.* Perry.

actual notice of the trust and reconveyance, it was held that the mortgagee took subject to the trust. It was said that the purchaser takes no benefit from the recitals in the deed to him that the debts had been paid, but he must ascertain, at his peril, that such is the fact. The reconveyance being in contravention of the trust is absolutely void, and the legal estate remained in the trustees. (See, also, *Allen* v. *De Witt*, 3 Coms., 276; *Cleveland* v. *Boerum*, 27 Barb., 252; *Roseboom* v. *Mosher*, 2 Den., 61; *Barber* v. *Cary*, 11 N. Y., 397.)

When the condition is subsequent, such as the application of the proceeds of the sale of land to the payment of debts, the purchaser is by section 85 of 3 R. S., 5th ed., p. 22, relieved from any obligation to see to the application of the proceeds to such use; and in other cases he is not responsible for the misconduct of the trustee, unless he is colluding with him to defraud the person entitled to the benefit of the proceeds or some part thereof.

The condition in this case was a condition precedent; and if the cases cited are law, the sale by the executors, under which the overseers claim, is utterly void. The evidence offered by the defendants was properly rejected.

By the will the whole income of the farm was required to be applied to the support of three of the persons entitled to be supported under the will.

If it was sufficient for the support of three of them, it was surely sufficient for the support of one of them, with a surplus over. From this surplus charges for taking care of the property could properly be paid. But the executors were not required to wait until the beneficiaries were dead in order to apply sufficient of the yearly income to pay such expenses. But before they could justify a sale of the lands to make good a deficiency thus created, it was necessary for them to state an account and show that such deficiency did in fact exist.

The offer does not go that length. The facts proposed to be proved would show that some $250 had been paid out by them; but how much surplus of income there was to apply toward it, is not shown or offered to be shown.

It seems to me that it was the duty of the executors to proceed against the *cestuis que trust* for a settlement of their account before they could assume to act, on the ground that the income was insufficient to the support of either or all of the beneficiaries.

In dealing with the real estate the executors were not acting as executors but as trustees, and for that reason the surrogate rightly refused to settle their account relating to the real estate.

If the foregoing views are correct, the right of the trustees to be paid their expenses incurred in the preservation of the property is not lost, but may be adjusted in the distribution of the proceeds of the sale amongst the persons entitled.

The judgment of the referee must be affirmed with costs. Judgment affirmed.