(12 Misc. Rep. 259.)

SUAREZ v. DE MONTIGNY et al.

(Supreme Court, Special Term, New York County. April, 1895.)

1. TRUSTS—TRANSFER OF TRUST PROPERTY—NOTICE OF LIMITATION.
    Where an assignment of a mortgage describes the assignor as trustee, the assignee is thereby put on inquiry to ascertain whether or not the instrument creating the trust conferred on the trustee the power to sell and transfer the mortgage.

2. SAME—VALIDITY OF LIMITATION.
    An instrument creating a trust in personal property which imposes, as a condition to the sale and transfer of the trust property, the obtaining of the consent in writing of the cestui que trust, is valid.

3. SAME—WAIVER OF LIMITATION.
    A provision in an instrument creating a trust, that the trust property may be transferred by the trustee only after obtaining the written consent of the cestui que trust, cannot be waived by the cestui que trust, nor can a transfer by the trustee without obtaining such consent be afterwards ratified.

Action by Benigno S. Suarez, as executor, against Isabel De Montigny, formerly Isabel Andrews, and others to foreclose a mortgage. Judgment for defendants.

John E. Parsons and Chase Nellen, for plaintiff.
Alfred J. Taylor, for defendant Central Trust Co.
Robert Kelly Prentice, for defendant Isabel De Montigny.

INGRAHAM, J. This action is brought to foreclose a mortgage made by the defendant Isabel De Montigny to Daniel Morison,

trustee of the separate estate of Isabel Von Linden. The question presented is whether or not the plaintiff ever became the owner of the mortgage. At the time of the execution of the mortgage, Morison was trustee, under a marriage settlement of Isabel Von Linden, made in contemplation of her marriage with Count Von Linden of Germany. The marriage settlement was dated November 9, 1876, by which all of the property of the said Isabel Von Linden (then Isabel Andrews) which she might have, or in any way become entitled to, or in possession of, under the provisions of the will of the late Loring Andrews, her father, was transferred to Blandina B. Andrews, as trustee, to be held under a certain trust specified in the said marriage settlement. Mrs. Andrews, the trustee, died, and Morison was substituted as trustee under the marriage settlement in her place and stead. The real property of the said Loring Andrews was sold under a judgment of the court in partition, and the defendant Montigny (then Isabel Andrews) purchased the premises described in the complaint, and received a conveyance thereof from the referee; and, as part of the consideration or purchase money of said premises, the defendant Montigny executed and delivered to Morison, as trustee, the mortgage in question. The mortgagee is therein described as "Daniel Morison, trustee of the separate estate of Isabel Von Linden, party of the second part"; and it recites the sale and conveyance of the premises by Anderson, referee, to the mortgagor, and declares that "this mortgage is given to secure part of the consideration or purchase money expressed in said deed advanced by said party of the second part thereto, to enable said party of the first part to complete said purchase." Morison having resigned as trustee under the marriage settlement, Francis H. Weeks was duly substituted as trustee in his place; and said Morison duly executed an assignment of the mortgage in question, dated 18th of November, 1889, whereby he (Daniel Morison), trustee of the separate estate of Isabel Von Linden, party of the first part, in consideration of the sum of one dollar, lawful money of the United States, to him in hand paid by Francis H. Weeks, substituted trustee of the separate estate of Isabel Von Linden, party of the second part, duly assigned, transferred, and set over the said indenture or mortgage to the said Weeks; and this assignment was duly recorded on the 22d day of December, 1890. Subsequently, on the 22d day of December, 1890, Weeks, by an instrument whereby he described himself as "I, Francis H. Weeks, substituted trustee of the separate estate of Isabel Von Linden," transferred the said mortgage to the plaintiff as executor of the last will and testament of Hyacinth S. Suarez, deceased; and the said Suarez, at that time, and as consideration of such transfer, paid to said Weeks the sum of $25,000, the amount then due upon the said mortgage.

By the terms of the marriage settlement, the property of Isabel Von Linden (then Isabel Andrews) was conveyed to the trustee to be invested by him, and the income thereof paid to the said Isabel Von Linden during her life, with the provision that upon her death the trustee or her successors shall well and truly transfer, con-

vey, and make over all property covered by the provisions of the said marriage settlement to such person or persons as she, the said Isabel Von Linden, may lawfully designate and appoint by her will or other instrument subscribed by her in the presence of two or more competent witnesses; and the said marriage settlement further provided that in case of the death of the said Isabel Von Linden, leaving no such will or written testamentary disposal of her said estate, then the same should go to such person or persons as should be entitled thereto under the laws governing the descent and distribution of the property of intestates for the kingdom of Wurttemberg. And it was further provided:

"That the said trustee and her successors shall have full power, for the purposes of this trust, to sell, grant, lease, convey, transfer, invest, and reinvest all and singular such estates, properties, and effects so held in trust, but not without the consent of said party of the second part [Isabel Von Linden] expressed in writing under her proper hand, and to hold all such substituted estates, property, and effects in trust for the purposes herein declared."

Said marriage settlement further provided:

"And the said party of the third part [the trustee], in consideration of the premises and of one mark, * * * doth hereby for herself, her executors, administrators, successors, heirs, and assigns, covenant and agree with said parties of the first and second parts, respectively, their heirs, executors, administrators, and assigns, that she will, and her successors shall, well and truly hold said estate herein described and all substituted estates in trust as herein provided, for the sole use, benefit, and behoof of the said party of the second part; that she and they will either keep said property as at present invested and secured, or will, with the written consent of her, the said party of the second part, and not otherwise, change the investment of the same from time to time, as good judgment and the purposes of this indenture may require."

The said marriage settlement further provided:

"And on the decease of said [Isabel Von Linden] party of the second part [the trustee] shall and will make legal and sufficient conveyances of said estates and property to the person or persons, if any, designated by said party of the second part as herein provided. And it is further covenanted and agreed that neither of the parties hereunto shall have any right or power to anticipate, advance, incumber, or in any way charge the said income, rents, profits, and dividends, or any of them, before the same shall legally become due and payable."

It is not disputed but that this instrument created a valid trust by which the trustee became vested with a title to the property in question, in trust for the purposes declared in said marriage settlement; that he became bound to execute the said trust according to its terms; and that his power to deal with the trust estate was controlled by the limitations, conditions, and provisions of the said marriage settlement. Nor do I think it could be disputed but that, as between the trustee and his cestui que trust, no conveyance by him of the trust property, without the consent of Madam Von Linden, expressed in writing under her proper hand, would be valid, unless some act of hers estopped her from objecting to such transfer. The construction of this marriage settlement is not at all in doubt. It was executed at Stuttgart, in the kingdom of Wurttemberg, but it related to property in this country, both real and per-

sonal. The trustee was a resident here, and it must be construed according to our law; but, at any rate, there is no evidence that the law of the kingdom of Wurttemberg is different from the law of this state.

The transfer by Weeks to the plaintiff was made without the knowledge or consent of Madam Von Linden, and the first question that is presented is whether or not that assignment by Weeks to the plaintiff was sufficient to convey the title of the mortgage to the plaintiff, or vest in him any title thereto; and the determination of this question must depend upon whether or not the plaintiff, dealing with Weeks, was chargeable with notice of the terms of the instrument under which he acted as trustee, and bound by the limitation of his authority contained in such instrument. The assignment of the mortgage to Weeks by the former trustee was expressly stated to be by Morison, the "trustee of the separate estate of Isabel Von Linden"; and the assignment to the plaintiff was by Weeks, "substituted trustee of the separate estate of Isabel Von Linden." Both assignments were executed by the assignors describing themselves trustees, etc.; and the acknowledgment in each case was that the assignor had executed the assignments "as trustee as aforesaid." Thus, upon the very face of the instrument which attempted to transfer the property to the plaintiff was recited the fact that Weeks, in making the transfer, was acting as a substituted trustee of the separate estate of Isabel Von Linden. Notice was therefore expressly given to the plaintiff that in making this transfer Weeks acted as a trustee; not individually, not as the absolute owner of the mortgage, but that he was selling to another a piece of property that he held as a trustee. Was plaintiff thus put upon inquiry to ascertain whether or not the instrument under which Weeks assumed to act conferred upon him power to sell and transfer the mortgage that he held as a trustee? I think it clear that he was.

Before considering the authorities which seem to require me to come to this conclusion, we must bear in mind the fact that Weeks was selling this mortgage, and the plaintiff was buying it from the trustee. Whether or not a trustee has power to sell and dispose of the trust property must depend upon the instrument creating the trust, and under which he is acting. It cannot be said that the mere transfer of a piece of property, be it real or personal, to a trustee, confers upon him the right to sell and convey the property so transferred. As to real property, a trustee would have no power to sell unless such power was expressly given by a provision of the instrument creating the trust; and in the case of personal property there must be either express authority to sell, or, from the nature of the property and the provisions of the instrument, it must appear that there was no limitation upon the power of the trustee to sell. But, at all events, a provision in the instrument creating the trust, restricting the power of the trustee to sell, or imposing a condition upon him in the exercise of that power, must limit his right or power to convey a title to a purchaser. An entirely different question would be presented upon the right of a trustee

to receive from the mortgagor a payment of the mortgage held in trust.

The rule is stated in 27 Am. & Eng. Enc. Law, p. 264, as follows:

"Those who deal with a trustee upon the faith of the trust estate which he represents are bound at their peril to know the extent of the trustee's power. It is only when they have had no notice of the trust, either active or constructive, that they are to be protected in the possession of trust property, or in the enjoyment of rights acquired through dealings with the trustee."

And the rule as thus stated is amply sustained by the authorities.

The case of Swan v. Bank, 24 Hun, 278, is exactly in point.    There certain bonds were deposited by a trust company to be used under an agreement in adjusting the affairs of a railroad company.    The receipt for them was issued to David E. Swan, as trustee;  and he acted in the business for his sister, who was the owner of the bonds.    The owner of the bonds authorized the trustee to use the receipt to borrow for his own benefit from the defendant the sum of $750.    He transferred the receipt to the defendant as security for the payment of $1,650.    The court held that:

"The fact that he was described as a trustee was a circumstance from which persons·disposed to deal with him upon the basis of the receipt should have inferred that his right to dispose of it, or of the bonds mentioned in it, was no more extended than that of the terms of the trust which had been created. The description of a person as trustee in an instrument of this nature is necessarily notice that he is not the absolute owner of the property affected by the terms of the instrument, but that he holds it for the benefit of some other person. Before they could safely deal with him for the disposition of either the receipt or the bonds, it was incumbent upon them, therefore, that they should ascertain what were the limits of his authority over the subject-matter of the trust, and to restrict their transactions with him concerning it within those limits."

See, also, Smith v. Burges, 133 Mass. 511.

And the question was presented to the court of appeals in the case of Kirsch v. Tozier, 143 N. Y. 394, 38 N. E. 375, where Andrews, C. J., in delivering the opinion of the court, says:

"Persons dealing with·a trustee must take notice of the scope of his authority. An act within his authority will bind the trust estate or the beneficiaries as to third persons acting in good faith and with notice, although the trustee intended to defraud the estate, and actually did accomplish his purpose by means of the act in question."

See, also, Griswold v. Perry, 7 Lans. 98.

It seems to be clear, therefore, that plaintiff was chargeable with notice of the terms of the instrument creating the trust, and was bound to know the extent of the trustee's power.    There can be no question but that the limitation of the power of the trustee to convey, as contained in this marriage settlement, was valid.    Such a condition was expressly held to be valid by the court of appeals in the case of Kissam v. Dierkes, 49 N. Y. 602; and it would follow, therefore, that the attempt by Weeks of the transfer of this mortgage to the plaintiff was, at the time that it was made, invalid, because Weeks had no power to transfer any of the securities in which the trust estate was vested, except with the written consent

of the cestui que trust, and the plaintiff was chargeable with notice of this limitation upon his power.

The plaintiff, however, claims that the subsequent acts of Madam Von Linden ratified this transfer by Weeks of this mortgage, or that she is now estopped as against this plaintiff from questioning the validity of the transfer, and that the trustee substituted in place of Weeks is also estopped. The effect of this limitation upon the power of the trustee was to impose a condition upon his power to transfer the securities in which the trust estate was invested; and it was a condition, not for the benefit of Madam Von Linden only, and was not one that could be waived by her. The estate and all those interested or to become interested in it were thereby guarded against any sale of the securities being made except with the assent of the trustee, and also the assent of Madam Von Linden. It was to protect the estate against an unauthorized use of the trust property by the trustee without the assent of a person interested in the performance of the trust; and the object clearly was to provide an additional safeguard against an improper disposition of the trust estate, and it was a condition precedent to any interference with the trust estate. The substituted trustee could not be bound by any assent that Madam Von Linden gave to an unauthorized use of the trust property. The marriage settlement expressly provided that neither of the parties to the agreement should have any right or power to anticipate, advance, incumber, or in any way charge the incomes, rents, profits, and dividends, or any of them, before the same should legally become due and payable. And, taking the whole instrument together, it was clearly the intention of the parties to protect the principal of the trust estate, and prevent its being misapplied or wasted. The only power that Madam Von Linden had in relation to the investments was either to consent or refuse to consent to any proposed change of investments. She had no knowledge of this transfer by Weeks to the plaintiff of the mortgage in question until long after it was actually transferred. And, to make this assignment valid, it seems to me clear that there must be an express assent in writing to the particular assignment contemplated. Madam Von Linden could not waive the necessity of her judgment being exercised upon each proposed assignment or transfer of property in which the trust estate was invested. For the benefit of the estate, her independent judgment upon each proposed transfer was required; and a general assent to change of securities, or a general waiver on her part of knowledge of the action of the trustee, would not avoid the necessity of an independent exercise of her judgment upon each proposed transfer. That judgment was never exercised by her. It is not claimed that she ever had knowledge of this particular transaction until after Weeks' frauds were discovered, and nothing that she said or did can take the place of what the marriage settlement required; that is, her assent in writing to the particular transfer of the mortgage. And when we come to examine the particular transaction that is relied upon by the plaintiff as a waiver of this provision, or by which she and the trustee under the marriage set-

tlement were estopped from insisting upon the invalidity of the transfer, it is apparent that that transaction was not such a consent as was contemplated by the marriage settlement, but was an attempt by the trustee and Madam Von Linden to appropriate to the use of Madam Von Linden a portion of the trust property in express violation of the terms of the instrument creating the trust. The trustee had no power, with or without the consent of Madam Von Linden, to take any portion of the trust fund, and remit it to the German bankers for any purpose. Such an act was an express violation of the trust, and was expressly prohibited by law; and her consent, which expressed upon its face a consent to sell any of the trust estate for the purpose of thus violating the provisions of the trust agreement, would be void, and would not be a protection either to the trustee or any one dealing with the trustee in the disposition of the trust estate.

The case, however, fails to show that the proceeds of this mortgage were directly used for the purpose of carrying out this illegal understanding. Assuming that there is evidence to show that the proceeds of the transfer of the mortgage to the plaintiff went into the bond and mortgage known as the "Weeks Mortgage," that mortgage was not taken in the name of Francis H. Weeks as trustee under this marriage settlement, but was taken in Weeks' individual name, and was a misapplication of the trust property. It may be true that the cestui que trust would have been entitled to follow the trust property and compel a transfer of this Weeks bond and mortgage to the estate; but they were not bound to do so. It has been held that a third party may not, for his own protection, require the cestui que trust to pursue the proceeds of the trust funds into other investments. See Barr v. Cubbage, 52 Mo. 404. None of the cases cited by the plaintiff go to the extent of holding that a person charged with the duty of approving the investment of trust funds can waive the approval required by the instrument creating the trust, or can ratify an improper or illegal disposition of the trust property by any subsequent act; nor do I see that upon any principle the trustee of this estate is estopped by any act of Madam Von Linden in regard to this property.

The case of Dillaye v. Bank, 51 N. Y. 348, as qualified by the case of Trustees v. Wheeler, 61 N. Y. 106, is not in point. In the last-named case, Dwight, C., in delivering the opinion of the court, referring to Dillaye v. Bank, says:

"The point was whether one who held a mortgage in trust with an apparently unrestricted power of disposition could transfer it free from the claims of the cestui que trust to a purchaser in good faith. It was held that he could."

And the distinction between that case and this is that in this case the trustee did not hold the mortgage in trust with an apparently unrestricted power of disposition, but held it in trust with a restricted power of disposition conditioned upon the assent, in writing, of Madam Von Linden.

But even assuming that Madam Von Linden could have ratified the action of Weeks in transferring this mortgage, and thus estop

her and the trustee from enforcing their rights, the ratification in this case was ineffectual, because Madam Von Linden was not aware of material facts which most certainly would have seriously affected her action. At the time that the transfer was made, Weeks had appropriated over $100,000 of the trust property for his own use. He had sold this particular mortgage, and had appropriated the proceeds of it to his own use, in lending the money to another person and taking security therefor in his own name, and not as trustee. If Madam Von Linden had been informed of these facts, it could not for a moment be supposed that she would have ratified the sale of this mortgage.

I have thus come to the conclusion that the attempted assignment of this mortgage to the plaintiff was ineffectual to vest a title to it, and it follows that the plaintiff has no cause of action.

The defendant the Central Trust Company asks for affirmative relief; first, that the bond and mortgage should be assigned by the plaintiff, and delivered to the Central Trust Company of New York; and to that relief I think it is entitled. The defendant trust company, in its answer, also asks that Isabel De Montigny be decreed to pay to it interest on this bond and mortgage from July 1, 1891, and for further relief. As there is no evidence before me that this answer was served upon the defendant De Montigny, I do not understand that I can grant any judgment in favor of the Central Trust Company against its codefendant in this action.

The defendant De Montigny asks for affirmative relief against the plaintiff for a judgment for $1,875, interest paid to the plaintiff upon the bond and mortgage in question. There is no evidence, however, but that this payment was a voluntary payment; and I do not think the defendant is entitled to such relief.

There must be judgment in favor of the defendants, with costs in favor of the defendant De Montigny, and affirmative judgment directing the plaintiff to transfer the bond and mortgage to the Central Trust Company, as trustee under the marriage settlement in question, with costs to the Central Trust Company; decision and judgment to be settled on notice.