(22 App. Div. 24.)

### FIRST NAT. BANK OF PATERSON, N. J., v. NATIONAL BROADWAY BANK et al.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

1. UNAUTHORIZED PLEDGE—NOTICE TO PLEDGEE.

One who accepts, as collateral for a personal loan, certificates of stock which show on their face that the borrower holds them as trustee, is put on inquiry as to the nature and effect of the trust.

2. SAME—TRUST PROPERTY.

Certificates of stock held in trust for G. for life, and then to pass to her children, were deposited by the trustee as collateral for a personal loan; and G. consented to the pledge, stating that she was the sole beneficiary now interested. In an action by the holder of the certificates as collateral, in which he was held to have acquired no right as against the trust, *held*, that under 1 Rev. St. p. 730, § 63, prohibiting assignments by trust beneficiaries, this representation by G. could not operate to subject her beneficial interest to the satisfaction of plaintiff's claim.

Appeal from special term.

Action by the First National Bank of Paterson, N. J., against the National Broadway Bank and Seth M. Tuttle. Judgment for defendant Tuttle, and plaintiff appeals. Affirmed.

The suit is to determine the ownership of 61 shares of the capital stock of the defendant the National Broadway Bank, issued and standing upon the books of the bank in the name of Philo P. Hotchkiss, trustee, which said shares, together with the dividends thereon, are claimed both by the plaintiff and by the defendant Seth M. Tuttle, as substituted trustee. The appointment of Hotchkiss as trustee was made by the probate court of Hartford, Conn., and the stock was transferred to him by order of that court. The trust was created in that jurisdiction by one William H. Imlay, by deed dated January 17, 1857. The estate consisted wholly of personalty,—bank shares,—the income whereof was payable to the creator's three daughters, in equal shares, with words of survivorship and remainder over to children. The 61 shares constituted a part of the trust fund created by Imlay for the benefit of his daughter Georgiana I. Hotchkiss during her life, and upon her death to her children. Mrs. Hotchkiss and two of her children are still living. Adams was succeeded as trustee by one Bartholomew, and Bartholomew by Philo P. Hotchkiss; and the latter thus obtained a transfer to himself, as trustee, of the 61 shares, upon the books of the bank. On July 25, 1889, Hotchkiss made and gave to the plaintiff a note for $12,000, signed by him in the name of Hotchkiss & Co., and pledged with the plaintiff, as collateral to said note, with other stock of this trust, the stock in suit. The plaintiff discounted the note, and paid the proceeds to the Home Insurance Company in satisfaction of a former note of Hotchkiss & Co., on which former note the same collateral had been held by the Home Insurance Company. At the time the plaintiff took the stock as collateral, it also received from Philo P. Hotchkiss a writing signed by Georgiana I. Hotchkiss, consenting that the trustee pledge this stock to borrow money for use in the business of Hotchkiss & Co., and reciting that she was the sole beneficiary now interested in the trust. On August 30, 1893, the plaintiff, through auctioneers, sold at public auction the stock in suit, under said stock note made by Hotchkiss, and bid in the stock. The plaintiff then filled its name in the blank powers of attorney to transfer said stock, and presented the stock certificates and powers of attorney to the defendant the National Broadway Bank, and demanded the issuance of new certificates, and that the stock be transferred on the stock book of the defendant bank from the name of Philo P. Hotchkiss, trustee, to that of the plaintiff, which the defendant bank declined to do. Hotchkiss, the former trustee, was convicted of grand larceny, and is now serving his sentence in prison. Subsequently, on May 22, 1895, Alice I. Richards, a daughter of Georgiana I. Hotchkiss, and entitled to one-half of the trust fund, absolute, on the death of her mother, presented a petition to the

supreme court for the removal of Hotchkiss as trustee, and the appointment of Seth M. Tuttle in his stead, which petition was granted upon due proof of its service on Hotchkiss and on Georgiana I. Hotchkiss and her daughter Georgia I. Hotchkiss, the other beneficiaries of the trust. On May 23, 1895, an order was entered removing Philo P. Hotchkiss as trustee, and appointing the defendant Tuttle as trustee in his stead under said trust deed. This action having been commenced in April, 1895, Tuttle, subsequent to his appointment as trustee, made application to be made party defendant, claiming that the stock was trust property fraudulently pledged to the plaintiff, and that the plaintiff had notice of the trust. Between January 1, 1894, and July 2, 1896, dividends amounting to $549 were declared upon the stock, and at the time of trial were held by the National Broadway Bank. The court below rendered judgment in favor of the defendant Tuttle, as trustee, for the possession and transfer of the stock and the accumulated dividends, and it is from that judgment that this appeal is taken.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Preston Stevenson, for appellant.

G. E. Waldo, for respondent Tuttle.

W. C. Beecher, for respondent National Broadway Bank.

O'BRIEN, J. The existence of the trust is not disputed, for the plaintiff is seeking to make title to the shares of stock here in controversy through and under Hotchkiss' title as trustee. The evidence shows that, in violation of the terms of the trust, Hotchkiss sought to divert the stock, and use it for his own benefit, or that of his wife; and the main question is whether he has succeeded, to the detriment of the cestuis que trustent, in conferring a good title to the stock upon the plaintiff. The rule is that one who takes securities from a trustee, with the word "trustee" upon their face, in payment of a private debt due from the trustee, acquires but a voidable title, as against the cestuis que trustent. In the well-considered case of Shaw v. Spencer, 100 Mass. 389, it is said:

"And that the mere use of the word 'trustee' in the assignment of a mortgage and note imports the existence of a trust, and gives notice thereof to all into whose hands the instrument comes, has been expressly decided by this court. * * * Where one known to be a trustee is found pledging that which is known to be trust property to secure a debt due from a firm of which he is a member, the act is one prima facie unauthorized and unlawful, and it is the duty of him who takes such security to ascertain whether the trustee has a right to give it. The appropriation of corporate stock held in trust as collateral security for the trustee's own debt, or a debt which he owes jointly with others, is a transaction so far beyond the ordinary scope of a trustee's authority, and out of the common course of business, as to be in itself a suspicious circumstance, imposing upon the creditor the duty of inquiry. * * * Inasmuch as such an act of pledging property is prima facie unlawful, there would be little hardship in imposing on the party who takes the security, not only the duty of inquiry, but the burden of ascertaining the actual facts, at his peril. * * * Notice of the existence of a trust is by all the authorities held to impose the duty of inquiry as to its character and limitations. And whatever is sufficient to put a person of ordinary prudence upon inquiry is constructive notice of everything to which that inquiry might have led."

Suarez v. De Montigny, 12 Misc. Rep. 260, 33 N. Y. Supp. 292; Id., 1 App. Div. 494, 37 N. Y. Supp. 503, affirmed by court of appeals.

This statement of the rule, as relating to stocks and notes which upon their face show that the person holding them does so as trustee,

47 N.Y.S.—56

is supported by the authorities in this state; and a clear definition of "constructive notice" is to be found in the case of Acer v. Westcott, 46 N. Y. 384, wherein it is said:

"Constructive notice may be said to be a knowledge by the purchaser of some facts which should put him upon inquiry, and require him to examine other matters that would generally unfold the true title. If he omit, in a proper case, to make the examination, he is conclusively charged with negligence, and with notice of the defect in the title. But if he exercised due diligence and failed to discover the defect, the presumption is rebutted, and he is regarded as a bona fide purchaser."

In 1 Perry, Trusts (4th Ed.) pp. 288, 289, § 225, it is said:

"If the transfer is by way of pledge or sale for the security or payment of the private debt of the administrator, it will be equivalent to full notice of the illegality of the transaction, and fraudulent. * * * But if a purchaser takes securities from a trustee, with the word 'trustee' upon their face, in payment of a private debt due from the trustee, the sale may be avoided by the cestui que trust, or the purchaser may be held as a trustee."

And our court of appeals has said in Wetmore v. Porter, 92 N. Y. 81:

"Whoever receives property, knowing that it is the subject of a trust, and has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the cestui que trust, but also of the trustee, to reclaim possession of the property, or to recover damages, if converted."

We regard it, therefore, as settled that the title of the cestui que trust in trust property can never be destroyed, except in favor of one who, for value, in good faith, without notice, receives it, and that one who receives property under such circumstances that he knew, or ought to have known, that it was the subject of a trust, cannot acquire title thereto, as against the rightful owners. The stock here consisted of shares of the National Broadway Bank, and had upon its face the word "trustee"; and the plaintiff, in taking it, had notice that the title of Hotchkiss was that of a trustee, and that he was pledging it, in connection with a loan, for a purpose which it could not be assumed was a trust purpose. Inquiry at the National Broadway Bank would have shown that in the order for the transfer to Hotchkiss there was a recital of the trust of January 17, 1857, of Chester A. Adams' will, its probate in Hartford, Conn., the appointment of Bartholomew as trustee, and the petition for the appointment of Hotchkiss as trustee; and, with this as a guide, further inquiry would have revealed the record of the original trust deed. The exercise, therefore, of ordinary caution and prudence, would have led to a full disclosure of the terms of the trust; and the plaintiff, having been put upon inquiry, which it failed to make, cannot be regarded as a bona fide purchaser. It will thus be seen that upon the main question we have reached the same conclusion as that arrived at by the learned trial justice, whose opinion is so satisfactory that we might well have rested our decision upon his statement of the law.

It is insisted, however, by the appellant, that the court below ignored the plaintiff's special equity, as against the life beneficiary of the trust estate. Considering the character of the certificate given to the plaintiff by Georgiana I. Hotchkiss, which to some extent deceived the plaintiff, she is not placed before the court in an enviable position, or entitled, as against the plaintiff, to any great consideration. She

had no title to the stock, but, as the life beneficiary, had a right to the dividends; and, if the power existed, a court of equity might well have compelled her to repair in part the injury which she was instrumental in inflicting upon the plaintiff, by depriving her of the dividends, and turning those over to the plaintiff. The difficulty, however, is that it was not in the power of the court, nor was it in that of the beneficiary, to alienate her interest in the dividends, the beneficiaries of trusts being expressly prohibited by statute from assigning or disposing of their interests. 1 Rev. St. p. 730, § 63. This provision, though relating to rents and the profits of land, was held to apply, by force of other sections of the statute, to the interests of beneficiaries in similar trusts of personalty. Lent v. Howard, 89 N. Y. 169, 181; Graff v. Bonnett, 31 N. Y. 9; Tolles v. Wood, 16 Abb. N. C. 1, 9. This legislative policy should not be defeated by the action of the court in permitting such alienation, or abrogating the trust; and the cases cited are authority for the proposition that it is only surplus of income, not necessary for the support of the beneficiary, that can be reached by creditors, or applied to the payment of debts. As the disposition of such income cannot be anticipated by the cestuis que trustent, or incumbered by any contract entered into providing for its pledge, transfer, or alienation previous to its accumulation, the court properly held that it could not, upon any principle of estoppel, turn over the dividends which, subsequent to the giving of the paper to the plaintiff by Mrs. Hotchkiss, accumulated on the stock.

The appellant further contends that Tuttle, as trustee, has no standing in court, because he was not validly appointed as trustee, and should not have had the stock awarded to him. As we have held that the appellant has no title to the stock, he has no interest in the question to whom it shall be awarded, and for that reason it is not necessary to pass upon this contention.

We think, therefore, that the judgment was right, and should be affirmed, with costs. All concur.