(COURT OF ERRORS.)

Cuyler and others, Appellants, *against* Bradt and others, Respondents.

THE appellant's bill in the court of *Chancery* set forth :

*Where several patentees bear, in equal proportions, the expense of obtaining a patent, and by the recital of deeds among*

1st. A patent of the 2d June, 1688, to *Van Rensselaer*, *Van Cortlandt*, *Van Ness*, and *G. T. Van Vechten* for the land called *Hosick ;* and,

That no tenancy *in common* being expressed, the estate at *law* was of *course* in *joint-tenancy.*

*themselves, it appears they intended to purchase in common, they will be taken as tenants in common and not as joint-tenants, though the patent be to them jointly. A conveyance with a recital of the intent of a purchase, is a conveyance with notice, and the grantee takes, subject to trusts implied as well as expressed.*

2d. The will of *G. T. Van Vechten* of the 12th *March*, 1703-4, devising his *farm*, &c. and all his residuary *real* estate, to his sons, *Johannes* and *Volchert*, as *tenants* in common, in *equal* parts.

3d. The deaths of *Van Rensselaer* and *G. T. Van Vechten*, before severance of *the joint-tenancy*.

4th. A conveyance afterwards of the 18th *October*, 1706, from *Van Ness* and *Van Cortlandt*, the surviving patentees, to *Johannes*, as the son of *G. T. Van Vechten*, which, after reciting the patent, further recites that the lands were purchased from the *Indians*, and the patent obtained at the joint and *equal* expense of the patentees ; that it was their true intent, purpose, and meaning, that they should hold as *tenants in common*, without any advantage by reason of joint-tenancy or survivorship. That by the death of *G. T. Van Vechten* and *Van Rensselaer*, before partition or any act to destroy or cut off the right of survivorship by reason of the joint-tenancy, according to such true intent, purpose and meaning, *Van Ness* and *Van Cortlandt*, as survivors, were, by such means, in the eye of the law, become sole proprietors ; that they having regard to the premises, and for a *nominal* consideration in money, conveyed to *Johannes*, an equal undivided fourth part of the lands.

5th. A conveyance from *Johannes*, of the 30th *October*, 1741, to *Bradt*, *Brees* and *Van Beuren*, his *sons-in-law*, reciting a partition of part of the lands among the proprietors, on the 20th *November*, 1732, when lots No. 2, 10, 11, 18, 20 and 21, fell to the share of *Johannes*, and lot No. 7 fell to the share of *J. Van Rensselaer*, and conveying to them, in consideration of *thirty* pounds, all such right, estate, title, interest and demand, whatsoever, as he had, or ought

to have, in those lots, and the undivided land; and that this conveyance was either *voluntary*, or if for *valuable* consideration, then *with notice* of the *right* or claim of *Volchert*.

6th. A deduction of the title of the appellants as the representatives of *Volahert* ; and,

7th. That the respondents hold as volunteers under *Bradt* and *Brees*.

The scope of the bill then was, that the appellants might be let in for a moiety of the lands held by the respondents by title derived from *Bradt* and *Brees*, and to have an account of the rents and profits.

To this bill the respondents demurred, and the demurrer being allowed, there was a decree of dismissal, but the decree being reversed on appeal, and the cause remanded to the court of *Chancery*, the respondents put in their answer, and proofs were taken.

The only *material* question as to facts contested between the parties was, whether there was sufficient evidence to find that the conveyance from *Johannes* to *Bradt*, *Brees* and *Van Beuren*, was either *voluntary*, or if it was for valuable consideration, then that it was with notice of the right of *Volchert*.

The *proofs* as to these *facts*, were:

1st. A partition-deed of the farm of *G. T. Van Vechten*, between *Johannes* and *Volchert*, of the 9th of *June*, 1707, reciting the *will* of their *father*.

2d. A mortgage from *Johannes* to *Coyeman*, of the 2d *September*, 1723, reciting the deed from *Volchert* for the parcels, which, on the partition, fell to the share of *Johannes*, and which then constituted his *farm*.

3d. A conveyance from *Van Beuren* to *J. Van Rensselaer* of the 22d *May*, 1749, reciting a convey-

ance from *Johannes* to *Brees, Bradt* and *Van Beuren,*
of the 12th *August,* 1738, for all his *farm.*

4th. That on the 2d *June,* 1740, *Brees, Bradt,*
and *Van Beuren* paid 8*l.* 0*s.* 2*d.* for *Johannes* to one
*Fresneau.*

5th. That on the 22d *July,* 1744-5, *Bradt, Brees*
and *Van Beuren* became bound with him to one *Dow*
for 52*l.* 8*s.* 0*d.* and that they also became bound with
him to one *Staats* in about 300*l.* but the time is not
mentioned.

6th. That *Van Beuren,* in 1748, sold his share of
the lands under the conveyance from *Johannes,* of the
30th *October,* 1741, to one *Collins,* for 20*l.*

7th. The deposition of *Bleeker,* examined as a
witness. He testified that he drew the deed from
*Johannes* to *Bradt, Brees* and *Van Beuren,* of the
30th *October,* 1741; that previous to the execution
of it, he showed it to *Volchert,* who directed his son
to go to the witness and tell *Johannes* not to execute
it; that the son told *Johannes* he was directed by his
father to desire him not to execute it; that *Johannes*
immediately, thereupon, left the room, and after an
absence of about fifteen minutes, returned and said,
what *shall I sign? I have already signed to Dow
and Jansen;* that *Bradt, Brees* and *Van Beuren* were
present, and *Brees* told him that he did not sign away
any more than he had, and then *Johannes* signed it.

On the hearing, on the bill, answer and proofs,
the chancellor again decreed the bill to be dismissed,
and thus assigned his reasons.

Mr. *President.* I dismissed the appellant's bill,

1. Because the crown, having granted to the pa-
tentees *jointly,* no *intention* of the patentees to hold

T t

ALBANY.

Cuyler and ors.
v.
Bradt and ors.

in common can vary the nature of the estate, either at law or equity, from that created according to the intent of the crown, expressed in the grant.

There is no intent that it should be otherwise expressed in the grant. The estate was in *joint-tenancy.* Their intention to hold as tenants in common, the estate which passed to them by the grant, cannot sever the estate that was in joint-tenancy.

2. Because the patentees paid equal proportions of the purchase-money to the Indians. This always makes a joint-tenancy in equity, where the estate is joint in law. The reason of this is founded on what is laid down in some of the books; namely, that it seems to be the doctrine of the court of equity, that where two or more purchase land, and advance the money in *equal* proportions, and take a conveyance to them and their heirs, this is a joint-tenancy; that is, a purchase of them jointly, of the chance of survivorship, which may happen to one as well as the other; but where the proportions of the money are not equal, and this appears in the deed itself, this makes them in the nature of partners; and, however the legal estate may survive, yet the survivor shall be considered but as trustee for the others, in proportion to the sums advanced by each of them.

It has already been intimated, that the patentees' having contributed equally in the *expense* of acquiring the land, was sufficient for the implication of a compact or trust between them, that no advantage was to be taken by survivorship, and, consequently, that the fitness of the rule here cited, might be questioned.

This is not only altogether a refinement, but it is also evidently erroneous; because, in order to equality

in chance of survivorship, there ought to be equality of age, as much as equality of contribution: to this may be added, that the correctness of a court of equity would require, that the presumption that persons ever act on a calculation of chance or luck, ought to be considered as rather odious, and, therefore, never to be assumed as a ground of decision.

3. Because, if the supposed trust is founded on any agreement between the original patentees, their heirs should have been parties to the suit, since they might, probably, have been called to show, that the conveyance to the eldest son, was conformable to the very terms of the agreement.

4. Because the legal estate being in the defendants, and no express trust appearing, the complainants should show such an implied trust is as clearly out of the statute of frauds.

5. Because the present defendants are *bona fide* purchasers, without notice of the claim of the complainants, *Bleeker's* testimony being inconclusive, as to the point of notice, particularly after so great a lapse of time, and the death of all the parties.

6. Because, there being no evidence of fraud, or of the commencement of a suit by *Volchert Van Vechten*, as set forth in the bill, and on which alone the court of appeals overruled the demurrer, and the estate having been held, for upwards of eighty years, by the purchasers under *Johannes*, without any suit or legal demand upon them; the court will not, after such a lapse of time, suffer them to be dispossessed by an implied trust, particularly as the estate has, probably, with many others in this coun-

ALBANY.
Cuyler and ors.
v.
Bradt and ors.

try, increased one hundred fold by the improvements thereon within that period.

*Per Curiam,* delivered by BENSON, J.   As to the question of fact above stated, it is not requisite to say more, than that the evidence at least preponderates in favour of the supposition, that the conveyance of the 30th *October,* 1741, although there might *have* been some pecuniary confederation for it, as from *Brees, Bradt* and *Van Beuren,* yet, that the greater inducement or consideration as from *Johannes,* was relationship.   This rendered it more a gift than a sale.   It appears, that *Brees, Bradt* and *Van Beuren* then knew of the will of *G. T. Van Vechten,* and of the conveyance from the surviving patentees to *Johannes,* so that the conveyance from *Johannes* to *Bradt, Brees* and *Van Beuren,* was not only voluntary, but they took with a notice of the right of *Volchert,* and either the one or the other is sufficient for the appellants.

Although the evidence is mentioned as preponderating only, the inference is not, therefore, intended to be, that if it was necessary, it could not be shown to be perfectly satisfactory.

As to the question of law, or right between the parties, it is to be observed, that a use is a right in one person, to have the use or profits or beneficial interest of land, and another person to have the right; that is, to be the legal, or formal possessor or tenant of it. These uses were borrowed from the civil law, and introduced at first by the clergy, to evade the statutes of mortmain by procuring a natural person to hold the land, but to the use of the corporate or politic persons, the monastery, or religious house.   This

contrivance was afterwards used as a means to enable
persons to devise, and also to prevent forfeitures by
*cestui que use.*

The land itself could not be devised, but the use might ; the land was forfeitable for crimes, but the use was not ; the only remedy for *cestui que use*, the person having the right to the use, against his feoffee to use, the person holding the land, if he refused to let him have the use of the land, was in a court of equity. Afterwards, the statute of uses, by annexing the possession to the uses, gave the *cestui que use* a complete remedy at law. This produced a distinction between executed and executory uses, the former being where the possession is by force of the statute, transferred to the *cestui que use*, so that the feoffee to the use is only, as it were, to forbear or be passive, and the use will execute itself in the *cestui que use ;* the latter is where an act is necessary by the feoffee to the use, to execute the use, as to convey over the land, or to receive and pay over the profits, &c. and since the statute, executory uses have been more generally distinguished by the appellation of trusts, which hath produced different appellations for the parties ; the feoffee to the use, is called the trustee ; the *cestui que use* is called the *cestui que trust*. The execution of trusts can be still compelled in equity only, and are there subject to the like rules, with uses at law ; they are assignable ; they are transmissible by descent and devise, and, which is peculiarly to be attended to in the present case, the possession of the trustee is the possession of the *cestui que trust*, and the rights of the latter may be barred by the statute of limitations, in like manner as

ALBANY.

Cuyler and ors.
v.
Bradt and ors.

uses or titles at law. But trusts are implied or ex‑ pressed; implied trusts are such as arise from the case, which is, therefore, the fact, and the trust is the right arising from that fact; express trusts not being to be deduced from the case itself, must be declared. No particular form, however, is requisite in declar‑ ing them, and they may be declared at any time.— Before the statute of frauds and perjuries, the evi‑ dence of the declaration might have been by *parol;* it must now be by writing. Purchasers for a valu‑ able consideration, from a trustee, do not purchase at their peril against the trust, and, therefore, they will not be adjudged to have purchased, subject to the trust, unless it is proved they had *notice* of it.

To apply what is here premised, to the present case—It might be insisted, that *G. T. Van Vechten* having contributed an equal *fourth* part of the ex‑ pense in acquiring the land, that fact, therefore, was in itself sufficient to imply an existing trust in favour of him; that he was to have an equal *fourth* part of the land in severalty, and that a court of equity would, accordingly, in case of his death, have com‑ pelled the surviving patentee to have conveyed a fourth part to his representatives; by the conveyance, however, from the surviving patentee to *Johannes,* the necessity of recurring to mere implication, for the trust is saved, the recital in that conveyance be‑ ing a sufficient declaration in evidence, that such trust was expressed between the patentees, and coe‑ val with their intention, to acquire the land; it was their true intent, purpose, and meaning, that they should hold as tenants in common, without any ad‑ vantage, by reason of joint‑tenancy or survivorship.

The trust, therefore, being an interest devisable, a
moiety of the fourth of *G. T. Van Vechten* passed by
his will to *Volchert*, and the conveyance from the
surviving patentees, is to be deemed the act by them
in the execution of the trusts; so that *Johannes*, as
to a moiety of the lands thereby conveyed to him,
took by implication or construction of law, in trust
for *Volchert*, and this hath been transmitted to the
appellants, his representatives.    *Johannes* not having
done any act in breach of the trust, or adverse to it,
so as to be considered as equivalent to a disseisin at
law, until the conveyance of the 30th *October*, 1741,
the possession, therefore, of *Johannes* to that time,
being to be deemed the possession of *Volchert*, which
being within sixty years, when the appellants filed
their bill ; and that conveyance being voluntary, or
they having notice at the time, of the right of *Vol-
chert*, the appellants are, therefore, entitled to a de-
cree for a moiety of the lands. Laches are, never-
theless, so to be imputed to them, that it would not
be proper for a court of equity to aid them to reco-
ver the rents or profits.

It will suffice to say, as a general answer, to the
reasons not specifically replied to, that it is obviously
to be collected, from what has already been suggest-
ed, that with respect to the allegation in the bill,
of a suit by *Volchert* against *Johannes* for the recove-
ry of the land, it not being proved, no notice was
taken of it on the hearing of this appeal, either by
the court or the counsel.

DECREE.—On hearing counsel on both sides, on
the appeal, in this cause, this court doth adjudge
and decree, that the decree of the said court of chan-

cery in this cause be reversed; and instead thereof, this court doth further adjudge and decree, that the respondents do, by sufficient conveyances, convey to the appellants severally in fee simple, according to their respective shares or interest therein, as they have in their bill of complaint set forth, their title to the same, under *Volchert Van Vechten,* one of the residuary devisees, named in the will of *Garrit T. Van Vechten,* also in the said bill set forth, an equal undivided moiety of such of the lands, conveyed by *Johannes Van Vechten,* the other residuary devisee, named in the said will, to *Bernardus Bradt, Hendrick Brees,* and *Barent Van Beuren,* by conveyance, bearing date the 30th day of *October,* 1741, in the said bill mentioned, and held by the said respondents, by title derived from the said *Bernardus Bradt* and *Hendrick Brees,* or either of them, and that the said bill, as far forth as the same prays that the respondents may account for the rents or profits of the said lands, be dismissed. And, except as to the costs intended in the decree of this court on the former appeal between the said parties, that they respectively pay their own costs on this appeal, and which have hitherto accrued in the said court of chancery, and that, as to all such other costs as shall hereafter accrue in the said court of chancery, the respondents pay to the appellants their costs in that behalf to be taxed. And it is ordered that the said cause be remanded to the said court of chancery, and that all necessary orders and directions be there given for carrying this decree into effect.

Decree of reversal.