(3 App. Div. 284.)

CLAPP v. BYRNES et al. (two cases).

(Supreme Court, Appellate Division, Second Department. April 7, 1896.)

1. DEED—CONSTRUCTION—HABENDUM CLAUSE.

A deed reciting the existence of litigation between the grantors, as heirs, concerning the property conveyed, and expressing their desire to put an end to such litigation, in order to carry out such adjustment, and for a nominal consideration, conveyed the entire estate to a third person, "his heirs and assigns," to "have and to hold all of the property ＊ ＊ ＊ granted ＊ ＊ ＊ unto the said party of the second part, his heirs and assigns, to his and their own proper use, benefit, and behoof forever." The grantors further covenanted to ratify all acts of the grantee which might be performed by him under and by virtue of the instrument. The grantee covenanted to accept the transfer of the property for the "purposes herein expressed." The deed did not further express the purposes of the conveyance. *Held,* that the grantee did not receive the beneficial interest in the property; the deed, at most, creating a power in trust.

2. BONA FIDE PURCHASERS—NOTICE TO PURCHASER—HOLDING UNDER THE EXECUTION OF A POWER.

A purchaser from a grantee holding under a deed executed by the donee of a power—the instrument creating the power not showing for what purposes the power should be executed—takes his title at his own risk, in case the power was not executed for an authorized purpose.

3. POWER IN TRUST—EXECUTION—PRESUMPTION.

Where the deed creating a power in trust recites that it is for the purpose of settling differences and litigation between the grantors, who inherited

the land conveyed, it will not be presumed that a conveyance by the donee of the power, to his wife, for a nominal consideration, was a valid execution of the power.

Appeal from circuit court, Westchester county.

Actions by Hawley D. Clapp against Edward G. Byrnes, impleaded with others. From a judgment for plaintiff in each case, entered on a verdict directed by the court, defendant Byrnes appeals. Affirmed.

The deed involved was as follows:

Whereas, prior to the thirtieth day of January, one thousand eight hundred and seventy-eight, the firm of Hawley D. Clapp & Son, composed of Hawley D. Clapp and Robert C. Clapp were keeping the Rossmore Hotel, in the city of New York, as proprietors thereof, and on said thirtieth day of January, one thousand eight hundred and seventy-eight, entered into certain written article of co-partnership, wherein said Hawley D. Clapp agreed, amongst other things, by suitable provisions in his will, to provide that in the event of his decease the business of said hotel should be continued in the same name by Robert C. Clapp, as successor. And whereas, on the thirteenth day of November, one thousand eight hundred and seventy-eight, the said Hawley D. Clapp made his last will and testament. And whereas, on the twenty-fourth day of July, one thousand eight hundred and seventy-nine, the said Hawley D. Clapp made and executed a certain codicil to said last will and testament, which contained certain provisions with reference to the continuance of said business of Hawley D. Clapp & Son. And whereas, said Hawley D. Clapp died on the fifth day of January, one thousand eight hundred and eighty, leaving a last will and testament, by the terms of which Robert C. Clapp and Mortimer R. Clapp were appointed the executors thereof, which said will has been duly probated in the office of the surrogate of the city and county of New York. And whereas, the said Hawley D. Clapp left, him surviving, his wife, Huldah H. Clapp, and children as follows, namely: Robert C. Clapp, Mortimer R. Clapp, Cora Clapp, Nellie V. B. Clapp, Hawley De Witt Clapp, and Alexander W. Clapp; the said Nellie V. B. Clapp, Hawley De Witt Clapp, and Alexander W. Clapp being at the time of the death of said Hawley D. Clapp infants under the age of twenty-one years, but the said Nellie V. B. Clapp being at the date of this instrument of the age of twenty-one years and upwards, and the said Hawley De Witt Clapp and Alexander W. Clapp being yet infants under the age of twenty-one years. And the said Robert C. Clapp having conducted the business of the Rossmore Hotel from the time of the death of said Hawley D. Clapp down to the fifteenth day of June, one thousand eight hundred and eighty-one. And the said Huldah H. Clapp being entitled, under the terms of said will, to a certain amount to be paid to her out of the net profits of conducting said hotel business. And the other children of Hawley D. Clapp, hereinbefore mentioned, being his heirs at law, and interested in his estate. And the said Mortimer R. Clapp having heretofore commenced a suit in the New York court of common pleas for the purpose of having a receiver appointed of the Rossmore Hotel and business. And the said Cora Clapp having heretofore commenced a suit for substantially the same purpose. And the said Huldah H. Clapp having heretofore filed a petition in the surrogate's court for the county of New York praying, amongst other things, the removal of Robert C. Clapp as executor. And the said Huldah H. Clapp having also heretofore commenced a suit in the supreme court of the state of New York, for the city and county of New York, for an accounting between Robert C. Clapp, claiming to be surviving partner of said Hawley D. Clapp & Son, and the estate of said Hawley D. Clapp, and for an accounting by Robert C. Clapp as one of the executors of the will of Hawley D. Clapp, deceased, and for the appointment of a receiver of, all and singular, the personal property of which Hawley D. Clapp died possessed, and also of the lease, good will, furniture, fixtures, property, and stores of the firm of Hawley D. Clapp & Son, of the Rossmore Hotel, so called. And an order having been made in the action last above mentioned, on the fifteenth day of June, one thousand eight

hundred and eighty-one, appointing Thomas B. Rand receiver of, all and singular, the personal property of which said Hawley D. Clapp died possessed, and also of the good will, furniture, fixtures, property, and stores of the firm of Hawley D. Clapp & Son, of the Rossmore Hotel, so called, which receiver last mentioned was appointed upon the consent of all the parties to the suit last above mentioned, with the exception of the guardian ad litem of one of the infants therein. And the said receiver having duly qualified and taken possession on the fifteenth day of June, one thousand eight hundred and eighty-one, of the property of which he was appointed received, and having continued in the possession of the same up to the time of the date of this instrument. And serious questions of difference having heretofore arisen between the widow of said Hawley D. Clapp, to wit, Huldah H. Clapp, hereinbefore mentioned, and said Robert C. Clapp, and also between said Robert C. Clapp and the other children of said Hawley D. Clapp. And very serious and expensive litigation having taken place between the parties last above mentioned since the death of Hawley D. Clapp. And the said differences and litigations being as to matters connected with the estate, real and personal, of said Hawley D. Clapp. And it being thought proper and advisable, and desired by all the persons hereinbefore mentioned, now living, that said litigations and differences shall be brought to an end, and a fair and proper adjustment thereof arrived at:

Now, this indenture, made this twentieth day of April, one thousand eight hundred and eighty-three, by and between said Huldah H. Clapp, Mortimer R. Clapp, Cora Callan (formerly Cora Clapp, the said Cora Clapp having heretofore married with Henry A. Callan, the party of the second part), Nellie V. B. Clapp, Hawley De Witt Clapp, Alexander W. Clapp, and Robert C. Clapp, parties of the first part, of the city, county, and state of New York, and Henry A. Callan, of the same place, party of the second part, witnesseth: That the parties of the first part, and each and every of them, in order to carry out said proposed adjustment, arrangement, and disposition of the family differences and litigations hereinbefore referred to, and with a view to that end, and in consideration thereof, and of one dollar paid by the party of the second part to each and every of the parties of the first part at or before the ensealing and delivery of this instrument, and of other good and valuable considerations moving to the parties of the first part, the receipt whereof is hereby severally acknowledged, hereby grant, bargain, sell, alien, remise, release, convey, quitclaim, and confirm and assign, transfer and set over, unto the said party of the second part, and to his heirs and assigns forever, all of the right, title, and interests, whether vested or in expectancy, and all claim and demand, which the parties of the first part, or each, any, or either of them, have or has in or to the property known as "Rossmore Hotel," situated in the city of New York, including all the right, title, and interest of the parties of the first part, and each of them, to the good will, property, fixtures, furniture, and stores belonging or appertaining to said Rossmore Hotel, and all benefits and advantages arising to the parties of the first part under the lease of said hotel and the renewals thereof, for five years and three hundred and sixty days succeeding the first day of May, one thousand eight hundred and eighty-three, which lease was heretofore executed by one George Ross to Hawley D. Clapp, deceased, and all the interest of the parties of the first part, and each and every of them, which they have acquired or hold or are entitled to, in any manner, under the will of the said late Hawley D. Clapp, as heirs, devisees, or legatees thereunder, and all right, title, and interest of the parties of the first part, and each and every of them, in and to the estate, both real and personal, of said Hawley D. Clapp, deceased. To have and to hold all of the property, rights, and interests herein granted, bargained, sold, and conveyed, with the appurtenances, unto the said party of the second part, his heirs and assigns, to his and their own proper use, benefit, and behoof forever. And the parties of the first part do hereby, for themselves, their heirs, executors, and administrators, and each of them doth hereby for himself or herself, and for his and her heirs, executors, and administrators, covenant, promise, and agree to and with the party of the second part, and his heirs and assigns, to ratify and confirm, and do hereby severally ratify and confirm, each, all, and every act or acts done, or which may, should, or could be lawfully and properly done, performed, or

executed by the said party of the second part, or by his duly-authorized and appointed agent or attorney, under or by virtue of this instrument; and the said parties of the first part, and each of them, hereby declare and acknowledge this instrument to be irrevocable by any act of the said parties of the first part, or of any or either of them. And the party of the second part hereby receives and accepts the transfer of the said property, rights, and interests mentioned in this instrument in manner and form and for the purposes herein expressed; hereby covenanting, promising, and agreeing with the parties of the first part, and each of them, that in consideration of this conveyance so made he will, so far as he reasonably can, carry out and effect the purpose hereinbefore recited.

In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

Sealed and delivered in presence of W. F. Dunning.

| | |
|---|---|
| Huldah H. Clapp. | [L. S.] |
| Robert C. Clapp. | [L. S.] |
| Mortimer R. Clapp. | [L. S.] |
| Cora Callan. | [L. S.] |
| Nellie V. B. Clapp. | [L. S.] |
| Hawley D. Clapp. | [L. S.] |
| Alexander W. Clapp,<br>by Huldah H. Clapp,<br>guardian. | [L. S.] |
| Henry A. Callan. | [L. S.] |

State of New York, City and County of New York—ss.: On this 20th day of April, 1883, before me severally personally came Huldah H. Clapp, Robert C. Clapp, Mortimer R. Clapp, Cora Callan, Nellie V. B. Clapp, Hawley D. Clapp, Alexander W. Clapp, by Huldah H. Clapp, his guardian, to me personally known, and known to me to be the individuals described in, and who executed, the foregoing instrument, and they severally acknowledged to me, that they executed the same.                                     W. F. Dunning,
                                                          Notary Public, N. Y. Co.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Herbert T. Ketcham, for appellant.

Richard V. Boyd and A. Britton Havens, for respondent.

HATCH, J. So far as this appeal presents the claim that respondent was divested of title to the premises in dispute by virtue of the judgment rendered upon the foreclosure of the mortgage held by Huldah H. Clapp, the decision in Clapp v. McCabe, 84 Hun, 379, 32 N. Y. Supp. 425, must be regarded as conclusive thereof in his favor, and this question need have no further consideration by us. Appellant claims to have met and overcome the obstacle which this case raised, by a deed dated April 20, 1883, and executed by respondent, his mother, and the other children of Hawley D. Clapp, Sr., to Henry A. Callan, and that, by subsequent conveyances from Callan and others, appellant became vested with respondent's title to the premises. This claim presents the substantial question for our determination. By appellant it is claimed that the deed to Callan vested in him an absolute fee, and the sole beneficial interest. By respondent it is claimed that the evident purpose of the deed was to create a trust for the benefit of the grantors; that the trust, not being authorized by the statute, was void, and the legal title remained in the grantors, subject to the execution of the trusts, expressed or implied, from the terms of the deed, as a power, if it could

be said that a power in trust was created. The habendum clause of the deed to Callan is to "his heirs and assigns, to his and their own proper use, benefit, and behoof forever," and another clause declares that the instrument shall be irrevocable by any act of the grantors. Appellant claims that this is conclusive, as determining the nature and extent of the estate granted, and is unaffected and uncontrolled by the premises or other clauses of the deed. Respondent insists, in answer, that the recitals in the deed, the premises, and the other clauses, control the habendum. It may be noted here that the latter clause scarcely adds anything to the legal effect of the deed, for the granting clause is to Callan, "his heirs and assigns." If there be left out of consideration the recitals and the declared purpose in the granting clause, and other terms of the deed, there appears to be no repugnancy between the premises and the habendum, for in both the grant purports to be to the grantee, "his heirs and assigns." The repugnancy exists in this: that the whole provisions of the instrument are inconsistent with any intention to grant the absolute fee and sole beneficial interest to the grantee. The question, therefore, presents itself, must all these provisions be disregarded, treated as surplusage, and made to yield to the habendum clause, or may the latter be qualified, limited, and controlled by the former? A consideration of some of the general rules for the construction of deeds may enable us to solve the problem more easily. In ancient conveyancing lore, the office of the habendum was to "determine the interest granted, or to lessen, enlarge, explain, or qualify the premises." Modern use has changed its significance. It is now the office of the premises "rightly to name the grantor and grantee, and to comprehend the certainty of the thing granted." And the habendum has become, in most cases, a mere form, where the estate is mentioned in the premises. 2 Burrill, Law Dict. 555–821. If the habendum cannot be reconciled with the premises so that full effect may be given to both, it must give way, and the latter will stand. Mott v. Richtmyer, 57 N. Y. 49–63. "Where the granting clause of a deed is silent as to the estate intended to be conveyed, resort may be had to the habendum to ascertain the intention of the grantor in that regard. It cannot be used either to enlarge or diminish the estate specifically defined in the granting clause, for, if it is repugnant to that clause, it is void, but, if that clause is either silent or ambiguous, then the habendum becomes the standard by which the estate granted must be measured." Havens v. Land Co., 47 N. J. Eq. 366, 20 Atl. 497. But, like the words in a contract, all the words employed in the deed should be given some effect, if possible, and if consistent with the evident purpose and operation of the deed. Havens v. Dale, 18 Cal. 366. The settled rule requires that the construction of written instruments should be as near to the minds and apparent intention of the parties as is possible, and comply with the statutory declaration (4 Rev. St., 8th. Ed., p. 2461, § 2) that in the construction of conveyances it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be ascertained from the whole instrument and is consistent with

the rules of law.    Bennett v. Culver, 97 N. Y. 250.    This rule is made imperative upon judicial tribunals, and cannot be evaded where the intention of the grantor is made clearly apparent by the language of the conveyance.    Coleman v. Beach, Id. 545.    It is said in this case:

"In the case of repugnant disposition of the same property, contained in the same instrument, the courts are, from necessity, compelled to choose between them; but it is only when they are irreconcilably repugnant that such a disposition of the question is required to be made. If it is the clear intent of the grantor that apparently inconsistent provisions shall all stand, such limitations upon and interpretations of the literal signification of the language must be imposed as will give some effect, if possible, to all of the provisions of the deed." Page 553.

No invariable rule of construction can be laid down.    Modern decisions tend to uphold conveyances, and give effect to the intention of the parties, regardless of technical rules of construction.    An illustration is found in 2 Devl. Deeds, § 855:

"Effect is to be given to the words, expressions, and provisions which carry out the evident intent of the instrument, rather than those which are inconsistent therewith, and either to reject such others as surplusage or repugnant, or to mold them into consistency with the intent, provided no rule of law is violated in so doing."

And therefore the intent, when apparent, and not repugnant to any rule of law, will control the technical words; for the intent, and not the words, is the essence of every agreement.    Tucker v. Meeks, 2 Sweeney, 736.

In the light of these rules this instrument is to be examined, and the intent of the parties, so far as such intent can be gathered from the whole instrument, aimed at and given effect, if the same be not inconsistent with any rule of law.    It is at once evident that if it was the intention of the grantors to vest the fee and sole beneficial interest in the whole estate, both in law and equity in Callan, this instrument is most remarkable, and extraordinary means have been employed to accomplish the result intended.    The grantors had become possessed, by inheritance and otherwise, of a large estate, consisting of real and personal property; and, if this construction obtain, we are required to say that being actuated by a desire to compose the family difficulties, and to rid themselves of the cause of all their troubles, they granted, conveyed, and assigned the whole to a stranger, Callan, his heirs and assigns, to have and to hold, to their own proper use, benefit, and behoof forever.    This is quite remarkable as an illustration of how the "root of evil" may be summarily dealt with, and at the same time exercise extreme benevolence.    It would, it seems, lessen the satisfaction of the grantors to make a simple conveyance, and so they recite all their grievances and differences, and express the spirit that actuates them, and thus inform the grantee why they transfer all of their property to him for a dollar, "and other good and valuable considerations," from which it may be inferred that they were as good and as valuable as the specific consideration stated.    The instrument recites that it was thought proper, advisable, and desirable that all said litigations (not the mortgage foreclosure, for that had before ended in the ref-

eree's deed) and differences should be brought to an end, and a fair and proper adjustment thereof arrived at. In order to carry out said adjustment and composure of the family differences and litigations, what did they do? According to appellant's interpretation, they gave it all to Callan, and thus ended the matter at a single stroke. And he accepted it as willingly, but, it seems, only "for the purposes therein expressed"; and he covenanted that "he will, so far as he reasonably can, carry out and effect the purposes hereinbefore recited." Respecting the method and manner to be pursued in adjusting and settling all the differences, we receive no light from the instrument. What remedy in law or in equity the grantors had to enforce this covenant, we are unable to say; and perhaps it is not important to know, as the grantee is bound to do it. It is argued that this declaration of the purposes for which the conveyance was made and accepted in no way interferes with the absolute beneficial use and disposition of the property by the grantee, since it is his own property, and he may do with it as he pleases. The grantors have absolutely transferred all their property to him, and they have retained no interest whatever recognizable in a court of law or equity. This was the grantee's position, if the appellant's construction is to be sustained. But further. The grantors covenant "to ratify and confirm, and do hereby ratify and confirm, all and any act or acts done, or which may, should, or could be lawfully and properly done, performed, or executed, by the grantee, under or by virtue of this instrument," and then declare the instrument to be irrevocable. The instrument is silent as to what acts may be lawfully and properly done under and by virtue of it, except that they must have some relation to the express purpose of adjusting and settling differences, litigations, etc. For these purposes only was the deed made and accepted. If the true construction of the deed is to transfer a fee simple absolute, the declaration of irrevocability adds nothing to it. If, on the other hand, it merely creates a trust, or a power in trust, it is irrevocable during the continuance of the trust or power, and these words are of no consequence. 4 Rev. St. (8th Ed.) p. 2449, § 108. There is an insuperable difficulty in endeavoring to carry out, and give force to, the true intent of the parties, taking all the provisions of the deed together, in reaching a conclusion that it was the intent of the parties to transfer the absolute fee, and sole beneficial interest, to Callan. If we disregard these provisions, we defeat the manifest intention of the grantors. And this can be done only by strained construction, the application of subtle and unsubstantial definition, and technical and arbitrary rules. It is wholly inconceivable and improbable, if such was the intention, that all these recitals should be made, and the purposes for which the transfer was made should be declared, and that the grantee should accept it for these purposes. We think it is more in harmony with the authority cited, and all the terms and conditions of the instrument taken together, to hold that the habendum clause should be limited and controlled by the other clauses and provisions in the deed. In Bank v. Holden, 105 N. Y. 415, 11 N. E. 950, it was held that a conveyance to B., his heirs and assigns forever, in trust for C., with

power to sell or mortgage, vests no title in B., but simply a general power in trust for C. Where an unauthorized trust is attempted to be created, the words "heirs and assigns forever" will not carry the fee to the grantee. Heermans v. Robertson, 64 N. Y. 332; Heermans v. Burt, 78 N. Y. 259. And in the latter case it is queried whether the instrument created merely an agency for the management of the estate for the benefit of the grantor, or a power in trust, and therefore irrevocable. By an antenuptial agreement the wife conveyed to her husband, his heirs and assigns, all her real and personal property, and constituted him a trustee thereof, to have the entire management, direction, and control of the property, and the instrument was declared irrevocable; but it was silent as to the persons to be beneficially interested in the trust. It was held that no trust was created, and that the husband took no title whatever. Dillaye v. Greenough, 45 N. Y. 438. Nor is the mention of a nominal consideration material, when it appears by the instrument itself that the intention was to create a trust, or a power in trust, and to convey no other estate or interest than was required for the purposes expressed. The mention of a nominal consideration was formal and unnecessary, for the other parts of the instrument indicated with reasonable certainty the true character of the transaction. Rockwell v. McGovern, 69 N. Y. 299. There was evidently no intention to give Callan a beneficial interest in the estate, or to invest him with any interest or trust other than that required to carry out the purposes mentioned in the deed. The "other good and valuable consideration" may be considered words of formality so commonly used in legal instruments, or they may refer to the benefit and advantage that will inure to the grantors from the acceptance of the trust or power, and the undertaking of the grantee to carry out their wishes.

We may now inquire whether the instrument creates a trust authorized by the statute, or whether it is good as a power in trust. It is clear that no valid trust is created by the instrument, and therefore no estate vested in the grantee, as trustee. Where the trust declared is not one recognized by the statute, the title remains in the grantor, subject to the execution of the trust as a power. Dry-Dock Co. v. Stillman, 30 N. Y. 194. Whether this deed creates an irrevocable power in trust is not, perhaps, necessary to consider. The main point before us is whether it operated to vest the legal title in Callan. It may be proper, however, to inquire into the nature, scope, and intent of this supposed power in trust. When an invalid trust is sufficiently declared in the instrument, the court will have no difficulty in enforcing the execution of the power according to the terms and conditions expressed. But where the supposed trust is of a vague, indefinite, and uncertain character, so that the court cannot ascertain with reasonable certainty what the power really is that it is called upon to enforce, the power must fall. Here, no doubt, the grantors intended to create a sort of trust; but its terms and conditions, and the nature and extent of the duties of the trustee, and the particular acts he may lawfully perform, are of so vague and indefinite a character that it would be impossible to enforce

the trust as a power of alienation without resorting to parol proof. If one is established, it must be by interpretation of the doubtful phraseology of a crude and imperfect document; and, if it exists, it is not the direct creation of the instrument itself, but proof would be essential to have it judicially established. No power to sell, lease, or convey is conferred by the instrument; and the statute of frauds declares that no trust or power over or concerning lands, or in any manner relating thereto, shall be created, unless by act or operation of law, or by a deed or conveyance in writing. The trust must appear in writing, with absolute certainty as to its nature and terms, before the court can undertake to execute it, so that it may not be called upon to execute the trust in a manner different from that intended. Dillaye v. Greenough, supra. It is essential that a sufficient intention to create a trust be expressed, with a beneficiary named, or that can be ascertained; and this must be fairly collected from the language used in the instrument. Wilcox v. Gilchrist, 85 Hun, 1, 32 N. Y. Supp. 608; Morse v. Morse, 85 N. Y. 53; Ward v. Ward, 105 N. Y. 68, 11 N. E. 373. The object of the statute, in limiting express trusts, was to restrict them to cases in which it is necessary for the protection of those interested that the title or possession should be vested in the trustee. Where no such necessity exists, the intent was that the trust should be executed as a power. Heermans v. Robertson, supra. Where, by the legal construction of the instrument, the sole purpose is apparent, merely to create a trust, although such instrument be an absolute conveyance in fee, such legal estate remains in the grantor, subject to the execution of such power, which is capable of being enforced in equity,—Ford v. Belmont, 7 Rob. (N. Y.) 97; the grantee becoming, if the duties imposed him are such as can be legally and properly executed, the trustee of a power. Dry-Dock Co. v. Stillman, 30 N. Y. 194. And it is to be implied from the very nature of a trust or power that the grantee does not take for his own benefit. Dillaye v. Greenough, supra. Examined in the light of the cases, and the Revised Statutes relating to powers (4 Rev. St., 8th Ed., p. 2444), what is the nature of this power, if it be one? In what manner is it to be executed, and by what means? The instrument itself is silent. All we know is that it was made and accepted for the purpose of adjusting and settling the differences and litigations mentioned, and that, in order to accomplish these purposes, it was intended that the grantee should have some power of disposition over the property. And the implication seems clear that it was not intended that the grantee should exercise the power for his own benefit, for that would be inconsistent with the purposes declared. Confining ourselves to the instrument itself, no power to sell, convey, mortgage, charge, or lease the property is conferred in terms. It may be "an authority to do some act in relation to the lands," but it is not stated in the instrument, nor does it otherwise appear, what acts the grantee may lawfully do or properly perform. It is not a general power, within the meaning of the statute, for it does not "authorize the alienation of the fee to any alienee whatever." Nor is it a special power, since it does not authorize the alienation of a less estate, nor designate

the persons "to whom the disposition of the lands is to be made." In a sense, it may be said to be special; i. e. that, whatever disposition of the lands may be authorized or confirmed, it shall be for the benefit of the grantors. Nor is it a beneficial power, for there are persons other than the grantee who have, by the terms of its creation, an interest in its execution. Nor is it a case "where an absolute power of disposition, not accompanied by any trust," is given to the grantee of the power, since no such power is expressed, and the deed was accepted for the purpose of accomplishing the "trust" or objects therein mentioned. Nor is the grantee enabled, by the terms of the power, to dispose of the fee for his own benefit. Section 85. Was this property liable to the claim of the creditors of Callan? Was it not subject to the claims of the creditors of the grantors (sections 93, 103, 104), either by suit or execution? Is it a power in trust? It is true that the trusts are not sufficiently defined so as to be capable of being enforced by a suit in equity, and therefore, strictly speaking, it may not be a power in trust, within the provisions of the statute. Nevertheless, there was an evident attempt to create a trust, or a power in trust, for the grantee, and not to vest a beneficial power in the grantee. For this purpose, therefore, we may say that it is a power in trust, in a general sense, though not such a one as is recognized by the statute, or enforceable in equity. Here there are "a class of persons, other than the grantee of such power designated," who would be "entitled to the proceeds or other benefits" that might "result from the alienation of the lands," if it should be authorized or ratified by them as being "lawfully and properly done by virtue of the instrument." Sections 94, 95. If the power was sufficiently defined, it would be imperative, and enforceable for the benefit of the persons interested. Section 96. Whether the purposes of the instrument had been accomplished, and the power had ceased, when Callan undertook to make the conveyances, does not appear.

Having arrived at the conclusion that the instrument created a power, if anything, in trust for the grantors, and not a beneficial power in Callan, let us inquire whether the conveyances in question were made by him to "carry out and effect the purposes hereinbefore recited"; whether they were "lawfully and properly done, performed, or executed, under or by virtue of this instrument"; and whether the grantees acquired any title thereby. Assuming that Callan had power to convey, did he in fact ever convey the premises here in question to Mortimer R. Clapp, through whom appellant derives his title? If not, then the appellant has acquired no title. It appears that on February 16, 1884, Henry A. Callan executed a conveyance of this property to one James T. Byrne, who on the same day conveyed to Cora Callan, the wife of Henry A. Both deeds expressed a nominal consideration, and they did not purport to be executed in pursuance or by virtue of any power. On July 22, 1884, Callan and wife executed a certain conveyance, expressing a nominal consideration, to Mortimer R. Clapp, but without referring to any power or power in trust. This deed contains a clause excepting and reserving from its operation that portion of the premises

described in a certain release executed in 1863, reference thereto being made for a particular description of the portion of the premises so excepted. It being conceded that the premises described in the complaint form a portion of the premises described in said release, it must follow that they were excepted from the operation of said deed from Callan and wife to Mortimer R. Clapp, and, consequently, that he acquired no title thereto which he could convey to the appellant. It will be observed that, as between Callan and his wife, the former had no interest in or power over the lands at the time of the conveyance to Mortimer R. Clapp; for he had previously conveyed all his right, title, and interest to her. Assuming, therefore, that Callan owned the premises, or possessed the power to convey them, and that the conveyance to his wife was a lawful or proper execution of the power, the title vested in her, and there it remains. It is evident from the record and documentary evidence in the case that the conveyance from the Callans to Mortimer R. Clapp was not made, nor does it purport to have been made, in execution of any power or powers in trust, but solely in compliance with the judgment and direction of the court in a certain action brought by Mortimer to set aside a certain other conveyance from Huldah Clapp (the mother) to Callan, and the deed to his wife. It is also evident therefrom that the premises in suit were not involved in that action, since they are excepted from the conveyance made in compliance with the judgment. Nor can we presume that the conveyance by Callan to his wife, for a nominal consideration, was made to carry into effect "the purposes hereinbefore recited," or that it was "lawfully and properly done, performed, or executed, under or by virtue of this instrument." If a power of alienation had been given in terms, it might be presumed, perhaps, that the power had been lawfully and properly executed in carrying out the purposes expressed. Bissing v. Smith, 85 Hun, 568, 569, 33 N. Y. Supp. 123. But we cannot reasonably indulge in any such presumption here without also inferring or presuming the existence of the power itself. We cannot say, in the absence of proof, that the conveyance to Cora was an act properly done under the instrument, and to accomplish the purposes therein mentioned. We cannot perceive that the conveyance to the wife of the grantee of the "power," for the consideration of one dollar, was made for the purpose of adjusting and settling the differences, litigations, etc., mentioned in the instrument of April 20, 1883. She was chargeable with notice of the terms and conditions of that instrument, and that they must be observed or she could acquire no title. If the power to convey had been expressly conferred, it would not be necessary to recite or refer to it in the conveyance made in the execution of the power. But, since it was not conferred in terms, the purchaser took the title at her own risk. If the power existed by necessary inference or implication, its execution was restricted to the purposes expressed, and it must be lawfully and properly done. Was not the defendant chargeable with notice of these matters by the records? We think he was. He was put upon inquiry. What acts might be lawfully performed or executed could only be ascertained by inquiry. Whether any particular conveyance

was such an act could not be ascertained from the instrument itself. And when we consider the most unusual character of the deed, transferring and as 'gning all the real and personal property of the grantors, as devisees and legatees, with all its recitals, and the declarations of the purpose of the making and acceptance of the instrument, we are bound to hold that a purchaser from the grantee of such a "power," and all subsequent transferees, must take their conveyance at their peril. And it may be that the statement of a nominal consideration would be evidence of fraud. 2 Devl. Deeds, § 1009. It is, indeed, remarkable that any intelligent lawyer should pass such a title, or that any purchaser should accept it. It seems too plain for argument that the recitals in the deed to Callan, the declaration of the purposes for which it was made and accepted, and the restriction on the power to acts that might be lawfully and properly done or performed under and by virtue of the instrument, constituted notice to all subsequent purchasers from him. Williamson v. Brown, 15 N. Y. 354; Judson v. Dada, 79 N. Y. 380; O'Connor v. Waldo, 83 Hun, 491, 31 N. Y. Supp. 1105; Suarez v. De Montigny, 12 Misc. Rep. 263-265, 33 N. Y. Supp. 292; Kirsch v. Tozier, 143 N. Y. 390, 38 N. E. 375; 2 Devl. Deeds, §§ 1001, 1002, 1005. A conveyance with a recital of its purposes and objects is notice thereof, and the grantee takes subject to trusts implied as well as express. Cuyler v. Bradt, 2 Caines, Cas. 326. Assuming that Henry A. Callan was the owner of the premises by virtue of the instrument of April 20, 1883, he conveyed all his interest to Cora; and if there is any outstanding title to these premises, as we have seen, she owns it. But, as we think we have established, Callan really had no such interest, and no power to convey to his wife, Cora. Consequently the title remained in the Clapps, the one-seventh interest in the plaintiff, and defendant Byrnes never received any conveyance conveying title to these premises.

The infancy of the defendant does not become important, in view of the conclusion we have reached, as there was no deed to ratify, confirm, or avoid. There is nothing upon which to base the charge of fraud alleged in the answer. It is reasonably clear that plaintiff may have supposed that his mother, Huldah H. Clapp, obtained title to the premises by the foreclosure and the referee's deed, and he had good reason to believe that she had conveyed them to Mortimer, though in fact they were excepted. But it would be a most difficult thing for him to ascertain, as it now is for skilled lawyers, among such bewildering transactions, to what the exception particularly related. He did no affirmative act to mislead, and we are unable to find any principle in the doctrine of equitable estoppel which precludes him from asserting his rights which were attempted to be taken from him during his minority. Defendant Byrnes never received any conveyance of these premises from any person having the legal title, or a power to transfer it. Plaintiff supposed and believed that Mortimer owned the property, and defendant had notice by the records that he did not. By this record he was bound. Bank v. Delano, 48 N. Y. 326; McPherson v. Rollins, 107 N. Y. 316, 14 N. E. 411; Kirsch v. Tozier, supra.

We conclude, therefore:    (1) That the habendum clause in the deed must yield to the other provisions of the instrument of April 20, 1883, and that no beneficial estate vested in Callan by virtue of that deed.   (2) If anything, the deed created a power in trust in Callan for the benefit of the grantors named therein.   (3) In fact, Callan never had any title to these premises that he could convey, and never conveyed them, and the title to the property in suit is now in the plaintiff.   (4) That Byrnes, the defendant, was put on inquiry concerning his source of title when he received the deeds, and such inquiry would have shown that the persons assuming to convey had no title to the premises, or power to convey it.

The judgments appealed from should be affirmed, with costs.   All concur.