It has been decided that sections 1 and 2 of the employers' liability act (chapter 600, p. 1748, Laws 1902) apply only to causes of action arising thereunder; but it has not been decided that none of the provisions of the act apply to causes of action for negligence in general, regardless of whether they arise under the statute or at common law. Section 3 (page 1750) of the act is manifestly of general application to all actions by servants against masters for negligence upon causes of action arising thereafter. It prescribes a new rule, with reference to the assumption of the risks, more favorable to the employé than the rule that previously obtained, and we are of opinion that it is applicable to this case.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.

---

McKENNA v. BROOKLYN UNION ELEVATED R. CO. et al.

(Supreme Court, Appellate Division, Second Department. June 17, 1904.)

1. EASEMENTS—CONVEYANCES—RESERVATION.

Where property was conveyed with the reservation of all right to the easements of light, air, and access, and damages for interference therewith by the construction of a railroad in front of the premises, the reservation of the easements which were appurtenant to the premises was ineffectual as a severance, and the grantee could execute a release of the damages to the railroad company.

2. SAME—NOTICE OF RESERVATION—RIGHTS OF VENDOR.

Where a vendor reserved as part consideration the right to damages to the premises from interference by a railroad company with the easements of light, air, and access, and the deed containing the reservation was recorded, the reservation was effectual between the parties, and the railroad company, procuring a release of the damages from the grantee, was chargeable with notice of the reservation and the equitable lien of the vendor.

3. SAME—DAMAGES—RELEASE BY GRANTEE.

Where, pending an action against a railroad company for damages for interference with plaintiff's easements of light, air, and access, the premises were conveyed with a reservation of the damages to the easements as part of the consideration, and the deed containing the reservation was recorded, the railroad company procuring a release of the damages from the grantee, and paying the consideration to the grantee, without the knowledge of the plaintiff was not released from the equitable lien of the plaintiff, the grantee having no authority from plaintiff to receive the money.

4. SAME—CONSIDERATION OF RELEASE—EVIDENCE.

Where a railroad company procured a release of damages for interference with the easements of light, air, and access from a grantee of the premises, who acquired them by deed, which was recorded, reserving such damages to the grantor as part of the consideration, the amount of the consideration for the release may be adjusted in an action by the grantor against the company and the grantee to declare the grantee a trustee and the release void, and it was error to exclude evidence as to value of the easement.

Appeal from Trial Term, Kings County.

Action by Jane A. McKenna against the Brooklyn Union Elevated Railroad Company and others. From a judgment for defendants, plaintiff appeals. Reversed.

Prior to the construction of the defendant's elevated railroad on Myrtle avenue, the plaintiff owned certain premises on that street. In September, 1900, she began suit for an injunction, and for $9,000 damages for trespass upon her easements. Issue was joined, and the action is pending and on the calendar. In July, 1901, the plaintiff conveyed the said premises to the defendant Gordon, and the conveyance was immediately recorded. The deed contained this clause: "Subject also to the party of the first part's reservation of all the right, title and interest of, in and to the easements occupied, abridged or used by the Brooklyn Union Elevated Railroad Company, and their legal lessee, The Brooklyn Heights Railroad Company, and a certain action now pending against said company and their lessee for injury to the fee and rental of said premises, and all right, interest, judgments or otherwise that may accrue therefrom, it being the intention of the party of the first part to convey said described premises reserving all the right or rights of damages against the said railroad companies by reason of the interference with the easements of light, air, and access, and to hold the party of the second part free from any charges or costs, judgments or otherwise, which may arise by reason of any action now pending against the said railroad companies, upon the understanding and agreement that the party of the second part will join with the party of the first part in all necessary papers or actions to enable the party of the first part to effectually and legally carry on her action, terminate the same, or carry out the directions or orders of the court in which such action is brought, and upon the termination of said action, by settlement or by judgment of the court, to release to the said railroad companies a right to the easements now occupied, used or abridged by them." In May, 1902, Gordon made, executed, and delivered to the Brooklyn Union Elevated Railroad Company and the Brooklyn Heights Railroad Company the following release: "Know all men by these presents, that I, Mary E. Gordon, wife of Edward F. Gordon, residing at No. 579 Myrtle Avenue, Borough of Brooklyn, and owner of premises No. 579 Myrtle Avenue, in the Borough of Brooklyn and City of New York, bounded and described as follows: Beginning at a point formed by the intersection of the northerly side of Myrtle avenue with the easterly side of Classon avenue; running thence northerly along the easterly side of Classon avenue sixty-two (62) feet ten and three-quarters (10¾) inches; thence easterly parallel with Myrtle avenue twenty-four (24) feet; thence southerly parallel with Classon avenue sixty-three (63) feet two (2) inches to the northerly side of Myrtle avenue, and thence westerly along the northerly side of Myrtle avenue twenty-four (24) feet to the point or place of beginning. Together with the buildings thereon erected and the appurtenances, for and in consideration of the sum of One dollar and other valuable considerations, receipt whereof is hereby acknowledged, hereby grant unto the Brooklyn Union Elevated Railroad Company and its lessee, The Brooklyn Heights Railroad Company, their successors and assigns, forever, the right to maintain and operate an elevated railroad in Myrtle avenue in front of said premises, as now constructed, maintained and operated. And hereby release the said companies and each of them, their successors and assigns, from all my claims and damages arising heretofore or hereafter from the construction, maintenance and operation of said railroad in front of said premises, as now constructed, maintained and operated. And hereby covenant that I am the owner of the said premises, and have good right to convey the above described property rights." In March, 1903, the plaintiff brought this action against the railroad corporations and Gordon, praying that Gordon be declared the trustee of the plaintiff; that her conveyance or release to the railroad companies be declared void, be set aside, and canceled; that Gordon be ordered to become a party to the original suit of plaintiff against the defendant railroad companies to recover fee and rental damages; and for any other requisite relief. The defendants answered, but Gordon withdrew her answer at the trial.

The decision of the Special Term found the facts heretofore stated, and also that the Brooklyn Union Elevated Railroad Company and the Brooklyn Heights Railroad Company paid Gordon, in consideration of the release, $500; that it was executed and delivered without the knowledge and consent of the plaintiff, but without collusion; and that the consideration paid was fair and reasonable. The complaint as to the defendant corporations was dis-

missed, with costs, and the court adjudged that the $500 was received by Gordon as trustee for the plaintiff, who was entitled to recover such sum against Gordon, with costs.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

George W. Sickels (Cyrus V. Washburn, on the brief), for appellant. Charles L. Woody, for respondents.

JENKS, J. The easements, being appurtenant to the premises, were unseverable by any reservation by the grantor. Pegram v. Elevated R. R. Co., 147 N. Y. 135, 41 N. E. 424; Kernochan v. N. Y. E. R. R. Co., 128 N. Y. 559, 568, 29 N. E. 65; Foote v. Elevated R. R. Co., 147 N. Y. 367, 42 N. E. 181; Western Union Tel. Co. v. Shepard, 169 N. Y. 170, 62 N. E. 154, 58 L. R. A. 115. Therefore the grantee of the premises could execute the release to the defendant corporation. Authorities, supra. But the reservation was effective between the grantor and grantee. In Pegram's Case, supra, the court, per Gray, J., say:

"There need be no question as to the right of the parties to agree to make such a reservation as this; but the effect of it, while certain in so far as it could not sever the easements from the land, was a question between them, in the disposition of which the concern of the defendants was that, in any action relating to a damage to the property for invasion of its easements, the legal owner should be bound by the result."

The Western Union Tel. Co.'s Case, supra, holds that such a reservation may be construed as a contract, and that the grantor should have the damage therein referred to as further consideration, Landon, J., for the court, saying:

"It was competent for the grantor and grantee to agree that a part of the consideration of the land conveyed should consist of the money damages thereafter to be received from the trespasser."

It was also held that under the circumstances a trust arose in favor of the grantor, commensurate with his interest in the subject-matter. All subsequent grantees, with notice of the existence of this right, stand in the shoes of the original grantee. Trustees v. Lynch, 70 N. Y. 440, 449, 26 Am. Rep. 615, where Allen, J., quotes the language of Lord Cottenham in Tulk v. Moxhay, 2 Phil. 774, "If an equity is attached to property by the owner, no one purchasing, with notice of the equity, can stand in a different situation from the party from whom he purchased," and says that a grantee is not absolved from a covenant in equity for the technical reason that it did not run with the land. See, too, Pomeroy, Eq. Jur. (2d Ed.) § 1048; Seymour v. Seymour, 28 App. Div. 495, 498, 51 N. Y. Supp. 130; Pinch v. Anthony, 8 Allen, 536. Bispham in his Principles of Equity, § 263, says:

"But if the purchaser has notice of the trust, he will be bound in the same way as the original trustee; in other words, he will be construed to hold the legal title as trustee for the equitable owner (citing authorities). The same rule will be enforced for the protection of * * * vendors who have parted with the legal title, but who still may have an equitable lien for unpaid purchase money, * * * and parties for whose benefit covenants have been entered into which affect the land, although they may not technically run with the land" (citing authorities).

The next question, then, is whether the defendant corporations had notice of this reservation prior to their taking of the release in question. I think that the record of the deed containing the said reservation was such notice. Clapp v. Byrnes, 3 App. Div. 284, 296, 38 N. Y. Supp. 1063, affirmed 155 N. Y. 535, 50 N. E. 277; Sweet v. Henry, 175 N. Y. 268, 276, 67 N. E. 574; Western Union Tel. Co. v. Shepard, supra; Perry on Trusts, § 239. In Clapp v. Byrnes, supra, this court, per Hatch, J., said:

"It seems too plain for argument that the recitals in the deed to Callan, the declaration of the purposes for which it was made and accepted, and the restriction of the power to acts that might be lawfully and properly done or performed under and by virtue of the instrument, constituted notice to all subsequent purchasers from him. Williamson v. Brown, 15 N. Y. 354; Judson v. Dada, 79 N. Y. 380; O'Connor v. Waldo, 83 Hun, 491 [31 N. Y. Supp. 1105]; Suarez v. DeMontigny, 12 Misc. Rep. 263, 265 [33 N. Y. Supp. 292]; Kirsch v. Tozier, 143 N. Y. 390 [38 N. E. 375, 42 Am. St. Rep. 729]; 2 Devlin on Deeds, §§ 1001, 1002, 1005. A conveyance with a recital of its purposes and objects is notice thereof, and the grantee takes subject to trusts implied as well as express. Cuyler v. Bradt, 2 Caines, Cas. 326."

It matters not that the defendants paid value. Bispham, Principles of Equity, § 262, citing Le Neve v. Le Neve, 3 Atk. 646; Perry on Trusts, § 262; Beach, Mod. Eq. Jur. 346.

The case is analogous to that of a vendor who has a constructive trust or lien upon the land for the amount of purchase money unpaid, which exists against the defendant corporations as subsequent purchasers with notice. Perry on Trusts (5th Ed.) § 232, says:

"The principle on which the lien depends is this: that a person who has obtained the estate of another ought not, in conscience, to keep it, and not pay the consideration money in full; and a third person, who receives the estate with full knowledge that it has not been paid for, ought not, as a matter of equity, to be allowed to keep it without paying for it."

Kent, C., in Garson v. Green, 1 Johns. Ch. 308, quotes Lord Redesdale in Hughes v. Kearney, 1 Sch. & Lef. 132: .

"The heir cannot be permitted to hold what his ancestor unconscientiously obtained, and is not a thing unconscientiously obtained when the consideration is not paid?"

See, too, Champion v. Brown, 6 Johns. Ch. 398, 10 Am. Dec. 343; Chase v. Peck, 21 N. Y. 581.

Pomeroy in his Equity Jurisprudence, § 1048, says:

"Equity impresses the trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and renders him liable for all the remedies, which may be proper for enforcing the rights of the beneficiary. It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a bona fide purchaser for a valuable consideration without notice."

The defendant companies plead, inter alia, the payment of $500 to Gordon, their grantor, and the grantee of the plaintiff. But is the payment to Gordon effective to release the equitable lien or the trust which is in favor of the plaintiff? There was nothing in the reservation in the deed or in the record that establishes the right or the authority of Gordon to receive this amount, which, as we have seen, must be regarded

as in the nature of the balance of the consideration paid by Gordon for her purchase of the premises. When the defendant paid this money to Gordon, it knew of the reservation in the deed, and the purpose thereof. Gordon had no authority in law or from the plaintiff to receive this money. Even if she be regarded as a trustee in the light of the effect of the reservation, she thereby had no authority to receive this money as if for the plaintiff. The defendant corporation, therefore, paid to Gordon at its peril. See Moore v. American Loan & Trust Co., 115 N. Y. 65, 77, 79, 21 N. E. 681; Perry on Trusts, § 926. But even if the law clothed Gordon with authority, or the plaintiff did the like, I think that there was error in the rulings of the learned court. The court found that the consideration, i. e., the $500 paid to Gordon, was fair and reasonable; but to this the plaintiff excepted, and she presses upon our attention that, after the defendants had proved this payment, her offer of competent evidence as to the value of such easements was wholly excluded, under exception. This part of the consideration was unliquidated. The full consideration of the property consisted in part of the compensation to be made to the plaintiff grantor for the trespass, not what the trespasser might be willing to pay. The defendant pleaded and proved that it paid $500 to the grantee of the plaintiff and its grantor. The court found that the transaction was unknown to the plaintiff, and the plaintiff proved that she had never received the money. There was therefore no evidence of her assent or ratification. In Western Union Tel. Co. v. Shepard, supra, the court per Landon, J., say:

"Equity looks to the substance of things, and will carry out this contract in its spirit and intention as the findings of the trial court have established it. Equity, when it is needful, always inquires into the consideration, and for that purpose does not stop at the letter of the instrument, but goes behind it, in all cases between grantor and grantee, and such of their assigns as have notice of the facts"—citing authorities.

I am of the opinion, adopting the theory that the conveyance was to stand, and the full consideration therefor was to be established, that the plaintiff, as against this evidence of payment of the $500, was entitled to offer the testimony rejected. Otherwise the consideration due the vendor would be fixed in part at the option of his vendee. All of the parties are before the court, and therefore the court "may adjust the equities and rights of all the parties and render a complete decree." Pegram v. N. Y. E. R. R. Co., supra; Western Union Tel. Co. v. Shepard, supra. The release or conveyance to the defendant companies may stand affirmed. Perry on Trusts, § 172, says:

"There is a distinction between cases of fraud in which equity will set aside the sale altogether, and those cases in which it will allow the sale to stand, and hold the purchaser as a trustee."

The amount of the "consideration" may be determined and adjusted in this action. And the court may, if such amount warrant it, direct the payment by Gordon of the $500 theretofore received by Gordon upon such amount.

The judgment should be reversed and a new trial be granted; costs to abide the final award of costs. All concur; BARTLETT, J., in result.